No. 98-500

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 159

295 Mont. 133

983 P.2d 345

STATE OF MONTANA,

Plaintiff and Respondent,

v.

CARLOS AGUILAR,

Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Assistant Appellate Defender, Appellate Defender Office;

Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Michael S. Wellenstein,

Assistant Attorney General; Helena, Montana

Mike McGrath, Lewis and Clark County Attorney; Mike Menahan,

Deputy County Attorney; Helena, Montana

Submitted on Briefs: March 25, 1999

No

Decided: July 8, 1999

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶I. The defendant, Carlos Aguilar, was charged by information filed in the District Court for the First Judicial District in Lewis and Clark County with felony assault. Following a trial by jury, Aguilar was convicted and sentenced to the State prison for commission of the felony assault, and received an additional sentence for use of a weapon during commission of the crime. Aguilar appeals the sentence imposed by the District Court. We reverse and vacate the enhanced portion of his sentence and remand for entry of judgment consistent with this opinion.**

**¶II. The issue on appeal is whether the weapon enhancement statute, § 46-18-221, MCA, when applied to a conviction for felony assault, violates the double jeopardy provision of the Montana Constitution found at Article II, Section 25.**

FACTUAL AND PROCEDURAL BACKGROUND

**¶III. On approximately August 3, 1996, Carlos Aguilar arrived in Helena by bus, and went to East Helena to visit his two sons Jessie, age seven and Jonathon, age five, who lived with their mother, Aguilar's ex-wife, Kim Stock. Aguilar and the two boys are black, and Stock is white.**

**¶IV. Stock's current boyfriend, John Christenson, who is white, was sleeping upstairs at Stock's house while Aguilar was playing Nintendo with his sons. Aguilar asked his sons how Christenson was treating them. One of the boys told Aguilar that Christenson called them "niggers" and directed other profanity at them. Jessie, the**

seven-year-old, also told Aguilar that Christenson had beaten Jonathon, the five-year-old, with a thorny rose bush and drawn blood. Aguilar confronted Stock about the physical abuse, and she admitted that Christenson had beaten Jonathon with the rose bush.

¶V. After hearing of Christenson's verbal and physical abuse of his boys, Aguilar confronted Christenson. He asked Christenson to go out onto the porch to talk to him. After some conversation, Aguilar grabbed Christenson by the throat and held him against the house. Christenson told Aguilar that he was cutting him, and Aguilar responded that "that was what he intended to do." He then told Christenson that if he ever mistreated his sons again he would kill him.

¶VI. On August 3, 1996, Carlos Aguilar was charged in the Justice Court for Lewis and Clark County with felony assault in violation of § 45-5-202, MCA. Aguilar waived preliminary examination and was bound over to the District Court for Lewis and Clark County for further proceedings. On August 30, 1996, an information was filed in the District Court for Lewis and Clark County charging Aguilar with felony assault for "purposely or knowingly caus[ing] bodily injury to John Alfred Christenson, Jr. by cutting him with a knife, in violation of Section 45-5-202(2), MCA." Aguilar pled not guilty on September 19, 1996, and a jury trial commenced on February 24, 1996. At trial, Christenson testified that he had a scratch on the neck, and was cut on the thumb. He testified that although he did not see a knife, Aguilar had held one to his throat. Aguilar maintained that he scratched Christenson on the neck with his fingernails, not a knife. On February 25, 1996, the jury found Aguilar guilty of felony assault. The District Court sentenced Aguilar to ten years in the State prison with eight years suspended for felony assault, and to an additional ten years with eight years suspended for use of a weapon during commission of the assault.

¶VII. Aguilar appealed the sentence enhancement to this Court on the basis that he was under duress at the time he committed the assault; that the mandatory minimum sentence requirements therefore did not apply pursuant to § 46-18-222(3), MCA; and that the District Court erred by refusing to apply this exception. Based on the stipulation by Aguilar and the State that the District Court failed to address the applicability of the exception to the mandatory minimum sentence for use of a weapon, we vacated the sentence of the District Court and remanded for resentencing. We also dismissed Aguilar's appeal without prejudice.

**¶VIII. On resentencing, the District Court held that the duress exception to the mandatory minimum sentence prescribed by the sentence enhancement statute did not apply because the threats were directed at third parties and not the defendant. Therefore, the court again imposed the original sentence of ten years with eight suspended for the charge of felony assault and ten years with eight suspended for use of a dangerous weapon. On August 6, 1998, Aguilar again appealed the judgment and conviction of the District Court.**

**¶IX. Aguilar's opening brief, filed prior to our decision in *State v. Guillaume*, 1999 MT 12, 975 P.2d 312, 56 St.Rep. 117, was again limited to the issue of whether the District Court erred by refusing to consider duress as an exception to the mandatory minimum enhancement of his sentence for use of a weapon. The State did not discuss double jeopardy in its responsive brief because it had not been raised in Aguilar's opening brief. Double jeopardy was first raised by Aguilar in reply to the State's brief. However, the State concedes that *Guillaume* controls and that Aguilar cannot be sentenced separately for use of a weapon. The State contends, however, that this case should be remanded to the District Court for reconsideration of Aguilar's entire sentence.**

**¶X. We conclude, as we did in *State v. Roullier*, 1999 MT 37, 977 P.2d 970, 56 St.Rep. 157, that the illegal sentence enhancement should simply be stricken and the judgment amended to that extent.**

## DISCUSSION

**¶XI. In *Guillaume*, the defendant was convicted of felony assault in violation of § 45-5-202(2)(b), MCA. *See Guillaume* 1999 MT 29, ¶ 1, 975 P.2d 312, ¶ 1, 56 St.Rep. 117, ¶ 1. The District Court sentenced the defendant to ten years in prison for the felony assault, and to an additional five years for use of a weapon pursuant to the sentence enhancement statute**

found at § 45-18-221, MCA. *See Guillaume*, ¶ 1. The defendant in *Guillaume* argued that as applied to him, the statute violated the double jeopardy clause of the Montana Constitution, Article II, Section 25. *See Guillaume*, ¶ 1. We agreed with the defendant and concluded that "Article II, Section 25 of the Montana Constitution provide[s] greater protection from double jeopardy than is provided by the United States Constitution." We ultimately held that:

[A]pplication of the weapon enhancement statute to felony convictions where the underlying offense requires proof of use of a weapon violates the double jeopardy provision of Article II, Section 25 of the Montana Constitution.

*Guillaume, ¶ 16.*

**¶XII. The facts in the instant case are nearly identical to those in *Guillaume*. Aguilar was charged with felony assault, sentenced accordingly, and his sentence was enhanced a second time for use of a weapon.**

**¶XIII. Both parties agree that the rule which we announced in *Guillaume* does apply retroactively to this case pursuant to our decisions in *State v. Brown*, 1999 MT 31, 975 P.2d 321, 56 St.Rep. 139 and *State v. Roullier,* 1999 MT 37, 977 P.2d 970, 56 St.Rep. 157, in which we invoked the common law plain error doctrine to review an error implicating a fundamental constitutional right that was not initially raised on appeal. Furthermore, we have concluded that a new rule of law in criminal prosecutions must be applied to all cases not yet final. *See State v. Egelhoff* (1996), 272 Mont. 114, 900 P.2d 260 (citing *Griffith v. Kentucky* (1987), 479 U.S. 314, 328, 107 S. Ct. 708, 716, 93 L. Ed. 2d 649, 661, and concluding that *Griffith* is binding upon this Court). We agree that in accordance with our prior decisions, we may properly review the applicability of *Guillaume* to the present case. Furthermore, the rule of law we established in *Guillaume* must be applied to the instant case, because it is not yet final.**

**¶XIV. We hold that under the circumstances of this case, enhancement of Aguilar's sentence for use of a weapon violates the double jeopardy clause of Article II, Section 25 of the Montana Constitution. Accordingly, we reverse the District Court's enhancement of the sentence pursuant to § 46-18-221, MCA, and remand to the District Court for revision of that sentence in that limited respect.**

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

Justice Karla M. Gray, concurring in part and dissenting in part.

**¶15. I specially concur in the Court's holding that *Guillaume* requires that the enhancement portion of Aguilar's sentence be stricken. It continues to be my view that *Guillaume* was wrongly decided. However, *Guillaume* is now the law of this state and, like everyone else, I am bound by it.**

**¶16. I respectfully dissent from that portion of the Court's opinion which permits the District Court to revise Aguilar's sentence only to the extent of deleting the sentence enhancement. The Court provides no rationale for rejecting the State's request for a remand for reconsideration of Aguilar's entire sentence, relying solely on *Roullier*. It is true that in *Roullier*, a case in which I did not participate, the Court remanded for the limited purpose of revising the sentence to strike the sentence enhancement. Nothing in that decision, however, suggests that the State had requested a remand for reconsideration of the entire sentence or provides a rationale for the limited remand.**

**¶17. Moreover, in both *Guillaume* and State v. Brown, 1999 MT 31, ¶ 15, 975 P.2d 321, ¶ 15, 56 St.Rep. 139, ¶ 15, decided less than two weeks before *Roullier*, the Court held that the sentence enhancement violated double jeopardy and remanded for "rehearing" and resentencing. Since no "rehearing" would be necessary to simply**

strike the offending sentence enhancement from the judgment, it is my view that those cases were remanded for a new sentencing hearing and new sentencing. This seems entirely appropriate, given the amount of discretion vested in district courts in criminal sentencing. When we strike part of a criminal sentence a district court believed appropriate, the district court should be given the opportunity to resentence the defendant.

¶18. In neither *Roullier* nor the present case has the Court taken notice of the more expansive remands in *Guillaume* and *Brown*. Thus, in four cases over less than six months, we have twice remanded for rehearing and resentencing and twice remanded on a much more limited basis. I would follow the *Guillaume* and *Brown* approach and remand for rehearing and resentencing, particularly in the absence of any rationale for doing otherwise.

/S/ KARLA M. GRAY