No. 00-171

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 54

STATE OF MONTANA,

Plaintiff/Respondent,

v.

DANIEL JOSEPH WHITEHORN,

Defendant/Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Peter Bovingdon, Public Defender's Office, Helena, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Micheal S. Wellenstein,          Assistant
Montana Attorney General, Helena, Montana; Mike McGrath,          Lewis and Clark County Attorney,
Helena Montana

Submitted on Briefs: November 29, 2001
Decided:  March 26, 2002
Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Daniel Joseph Whitehorn (Whitehorn) appeals from the order of the First Judicial District Court, Lewis and Clark County, denying his petition for postconviction relief.  We reverse and remand.

¶2    The issue presented on appeal is whether the District Court erred in denying Whitehorn's petition for postconviction relief by not retroactively applying this Court's holding in State v. Guillaume, 1999 MT 29, 293 Mont. 224, 975 P.2d 312.  Whitehorn ultimately asks this Court to overrule prior case law to allow for retroactive application of Guillaume.  Implicit in his argument is the following determinative question: Should the general rule of retroactive application from  Teague v. Lane (1989), 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334, apply to Guillaume?  We conclude the rule of retroactive application from Teague does not apply to Guillaume and therefore overrule in part, State v. Nichols, 1999 MT 212, 295 Mont. 489, 986 P.2d 1093.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3    On April 7, 1995, Whitehorn was charged by Information with the following offenses: Count I, attempted deliberate homicide; Count II, criminal possession of dangerous drugs; and Count III, criminal possession of drug paraphernalia.  Following plea negotiations, the State amended Count I into two charges: (a) felony assault in violation of § 45-5-202(2) (1993), MCA, and (b) criminal endangerment in violation of § 45-5-207 (1993), MCA.  The State also agreed to dismiss Count III, criminal possession of drug paraphernalia.

¶4    On May 4, 1995, Whitehorn pled guilty to Count Ia, felony assault; Count Ib, criminal endangerment; and Count II, criminal possession of dangerous drugs.  In his written plea agreement, Whitehorn offered the following factual basis for his offenses:

> I believe I am guilty of these offenses because I possessed methamphetamine when I was stopped for a traffic offense and when this drug was found I attempted to reach a handgun to take my own life.  The arresting officer attempted to stop me from using the handgun and I caused reasonable apprehension of serious bodily injury to that officer by the use of the handgun.  A second officer joined in the struggle and I caused substantial risk of death or serious bodily injury to that officer by removing his loaded handgun from his belt and struggling with that weapon until the weapon discharged during the struggle.

¶5    On June 12, 1995, the District Court sentenced Whitehorn to the Montana State Prison for a period of: ten years on Count Ia, felony assault; ten years on Count Ib, criminal endangerment; and five years,

suspended, on Count II, possession of dangerous drugs. The court added a ten-year sentence, with five years suspended, for the use of a weapon in the commission of a criminal offense pursuant to § 46-18-221, MCA (1993). The sentences were ordered to run consecutively.

¶6    Whitehorn sought review of his sentence by the Sentence Review Division, which modified his sentence on March 7, 1996. The modification provided that Whitehorn would not be eligible for parole until he served twelve and a half years of his sentence, noting that those twelve and a half years could not be reduced by good time and adding that Whitehorn be declared a dangerous offender. Whitehorn appealed the modification to this Court. On July 30, 1996, we struck down the Sentence Review Division's limitation on Whitehorn's good time.

¶7    In February of 1999, we decided Guillaume, in which we held that enhancing a defendant's sentence for the use of a weapon pursuant to § 46-18-221, MCA, where the underlying offense requires proof of the use of a weapon--in that case, felony assault--violated the double jeopardy provision of the Montana Constitution. See Guillaume, ¶ 16.

¶8    On June 10, 1999, Whitehorn filed a motion for resentencing in light of Guillaume, arguing that his enhanced sentence was contrary to the law and should be stricken because his underlying offense of felony assault required proof that he used a weapon. Initially, the State agreed that Guillaume applied and that resentencing was appropriate.

¶9    Prior to resentencing, however, the State changed its position in light of State v. Aguilar, 1999 MT 159, 295 Mont. 133, 983 P.2d 345 and later, Nichols, supra. The State argued that Whitehorn's petition should be denied based upon these cases, which held Guillaume applied only to proceedings which were not yet final at the time Guillaume was decided. It argued that because Whitehorn's case had been final several years prior to that time, Nichols clearly barred reconsideration of Whitehorn's sentence.

¶10    On December 3, 1999, while his motion for resentencing was still pending, Whitehorn filed a petition for postconviction relief and memorandum in support of the petition. Whitehorn argued that his case was not final since he had not exhausted his remedy of postconviction relief, noting he was within the five-year time period for filing petitions for postconviction relief pursuant to § 46-21-102, MCA.

¶11    The District Court found Whitehorn's petition for postconviction relief was timely filed under § 46-21-102, MCA. However, relying on Nichols, the court found that Whitehorn's case was final and not pending on direct review, and thus concluded Guillaume could not be retroactively applied to his case. Whitehorn appeals the District Court's denial of his petition for postconviction relief.

## STANDARD OF REVIEW

¶12    We review a district court's denial of a petition for postconviction relief to determine whether its findings of fact are clearly erroneous and its conclusions of law correct. State v. Wells, 2001 MT 55, ¶ 4, 304 Mont. 329, ¶ 4, 21 P.3d 610, ¶ 4 (citation omitted).

## DISCUSSION

¶13 Whitehorn argues on appeal that the District Court erred in not retroactively applying our Guillaume decision to his case. In response, the State maintains that Whitehorn waived appellate review of his arguments concerning the retroactivity analysis used by this Court in Nichols because Whitehorn did not raise them in the District Court. The State points out that Whitehorn's appeal to the District Court focused on the argument that Whitehorn's case was not final in an effort to distinguish his case from Aguilar and Nichols, and thus urges us not to consider newly raised issues on appeal.

¶14 The dissent also contends that Whitehorn should be procedurally barred from raising the retroactivity issue on appeal because he failed to raise the issue in District Court. However, the dissent fails to recognize the unique nature of Whitehorn's appeal; he is asserting this Court erred in Nichols in its application of retroactivity principles from Teague. Under the principles of binding authority, the District Court could not overrule our holding in Nichols, only this Court could do so. See Black's Law Dictionary 1195 (7th ed., 1999) ("a lower court is bound by an applicable holding of a higher court in the same jurisdiction"). For this reason, and those below, we conclude under the common law doctrine of plain error, that Whitehorn is not procedurally barred from raising his retroactivity arguments on appeal.

¶15 Although the general rule is that new legal theories and issues not raised before the trial court are not considered by this Court on appeal, as it is unfair to fault the trial court on an issue it was never given an opportunity to consider, there are exceptions to the rule. Renner v. Nemitz, 2001 MT 202, ¶ 15, 306 Mont. 292, ¶ 15, 33 P.3d 255, ¶ 15. These exceptions "typically apply to criminal cases and, further, are only allowed when constitutional or substantial rights" are at issue. Renner, ¶ 15 (citing State v. Finley (1996), 276 Mont. 126, 915 P.2d 208, overruled on other grounds by State v. Gallagher, 2001 MT 39, 304 Mont. 215, 19 P.3d 817).

¶16 The dissent maintains that Whitehorn's appeal does not fall under the common law plain error doctrine this Court has applied in a long line of cases, including State v. Finley, noting that Finley was a direct appeal case, and therefore does not apply in support of Whitehorn's postconviction appeal. Even though Finley filed a petition for postconviction relief with this Court, the dissent is correct that Finley was technically a direct appeal case (characterized by the Finley Court as an "out-of-time appeal"). See Finley, 276 Mont. at 132, 915 P.2d at 212. However, nowhere in Finley, or in any other cases where this Court applied the common law plain error doctrine, has this Court categorically held that the common law plain error doctrine cannot be invoked in postconviction relief proceeding.

¶17 In Finley, we recognized "our inherent power and paramount obligation to interpret Montana's Constitution and to protect the various rights set forth in that document." Finley, 276 Mont. at 137, 915 P.2d at 215.
We held that

> this Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made and notwithstanding the inapplicability of the § 46-20-701(2), MCA, criteria, where failing to

review the claimed error at issue may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial proceedings, or may compromise the integrity of the judicial process.

Finley, 276 Mont. at 137, 915 P.2d at 215. Moreover, we have applied the common law plain error doctrine in situations other than criminal cases on direct appeal. For example, we applied the common law plain error rule when reviewing a "civil" appeal from the denial of a driver's license reinstatement petition. See Seyferth v. State, Dept. of Justice (1996), 277 Mont. 377, 922 P.2d 494. See also Parker v. Crist (1980), 190 Mont. 376, 621 P.2d 484 (application of common law plain error in postconviction case prior to Finley).

¶18 Application of the common law plain error doctrine, as set forth in Finley, stems from our inherent power of appellate review and is applicable "notwithstanding" procedural bars when a criminal defendant's fundamental constitutional rights are at stake. Such rights are undeniably at stake here. We do not invoke this power lightly. As Finley directs, "we will henceforth use our inherent power of common law plain error review sparingly, on a case-by-case basis, and we will invoke that doctrine only in the class of cases aforementioned." Finley, 276 Mont. at 138, 915 P.2d at 215. This is such a case. We conclude Whitehorn's claims of error warrant invocation of our inherent power of review. Accordingly, the common law plain error doctrine is appropriately applied to Whitehorn, who as discussed below, otherwise meets the requirements for review under Finley.

¶19 Whitehorn contends his constitutional rights protecting him from double jeopardy are violated by not retroactively applying Guillaume. In that regard, we have previously reached the merits of a double jeopardy argument where a defendant failed to raise the double jeopardy issue in the district court, concluding that "failure to reach [defendant's] double jeopardy claim would result in a manifest miscarriage of justice." State v. Weitzel, 2000 MT 86, ¶ 43, 299 Mont. 192, ¶ 43, 998 P.2d 1154, ¶ 43 (citing State v. Brown, 1999 MT 31, 293 Mont. 268, 975 P.2d 32 (plain error review invoked to reach the Guillaume issue on a direct appeal). See also, State v. Roullier, 1999 MT 37, 293 Mont. 304, 977 P.2d 970; and Aguilar, supra.

¶20 For the reasons set forth below, we conclude that Whitehorn has properly demonstrated that a fundamental constitutional right is at issue, and that failure to address the issue here would result in a manifest miscarriage of justice.

¶21 The State also argues that the weapons enhancement sentence imposed by the District Court could be applied to either the felony assault or criminal endangerment count, noting there is no violation of double jeopardy in applying the weapons enhancement statute to criminal endangerment. After reviewing the record, we conclude there is nothing to support the conclusion that the District Court intended the weapons enhancement penalty be applied to the criminal endangerment conviction. In fact, the record supports the opposite conclusion.

¶22 In the Memorandum and Order from which Whitehorn's appeal arises, the District Court addressed Whitehorn's Guillaume retroactivity arguments on their merits. The court denied

Whitehorn's petition for postconviction relief on the basis of Nichols, finding that Whitehorn's case was final and not pending on direct review, and thus not amenable to a Guillaume analysis. We conclude from the language and tenor of its order that the District Court contemplated that the weapon's enhancement sentence in fact applied to the felony assault conviction.

¶23 The Court stated at page 2 of its order:

> In February 1999, the Montana Supreme Court ruled that the imposition of an enhanced sentence for the use of a weapon pursuant to Section 46-18-221, MCA, is unconstitutional if the underlying offense included, as an element of the offense, the use of a weapon. State v. Guillaume, [citation omitted]. Use of a weapon is an element of the offense of felony assault. Section 45-5-202, MCA. [Emphasis supplied.]

Had the District Court meant for the enhancement to apply to the criminal endangerment conviction, there would have been no reason to address the merits of Whitehorn's argument, much less insert the language emphasized above.

¶24 Moreover, the argument that the enhancement portion of the sentence could arguably be applied to the criminal endangerment conviction was not raised below; it is raised by the State for the first time on appeal. Unless fundamental rights are implicated in the issue presented (See ¶ 20 herein), we have consistently held that issues not raised in the district court will not be addressed on appeal. State v. Herrera, 1998 MT 173, ¶ 17, 289 Mont. 499, ¶ 17, 962 P.2d 1180, ¶ 17 (we will consider for review only those issues raised in the pleadings or otherwise before the district court) (citation omitted); and State v. Schaff, 1998 MT 104, ¶ 26, 288 Mont. 421, ¶ 26, 958 P.2d 682, ¶ 26 (we will not address issues or theories raised for the first time on appeal) (citations omitted).

¶25 Whitehorn contends that his constitutional rights against double jeopardy were violated when the District Court denied his petition for postconviction relief that sought to amend his sentence in light of Guillaume. Whitehorn ultimately asks this Court to overrule our holding in Nichols, in which we decided not to apply Guillaume retroactively in cases on collateral review.

¶26 In Guillaume, this Court held that application of the weapons enhancement statute to a felony offense that requires proving the use of a weapon violates Montana's constitutional protection against double jeopardy. Guillaume, ¶ 16. After concluding that the Montana Constitution afforded greater double jeopardy protection than the federal counterpart, this Court noted: "we are guided by the fundamental principle embodied in double jeopardy. Simply put, double jeopardy exemplifies the legal and moral concept that no person should suffer twice for a single act." Guillaume, ¶ 17. Montana's Double Jeopardy Clause prohibits anyone from being "again put in jeopardy for the same offense previously tried in any jurisdiction." Art. II, Sec. 25, Mont. Const. This clause offers protection against "multiple prosecutions for offenses arising out of the same transaction, and multiple punishments imposed at a single prosecution." Guillaume, ¶ 8 (citations omitted). It was upon the latter ground that Guillaume was decided. Guillaume, ¶ 23.

¶27    This Court has given retroactive effect to the Guillaume decision in cases that were not yet final when Guillaume was decided.  See Weitzel, supra; Hart, supra; and Aguilar, supra.  Likewise, even in those direct review cases where the double jeopardy issue was not raised in the district court, this Court, under the plain error doctrine, has given Guillaume retroactive effect, when failure to do so would result in a miscarriage of justice.  See Roullier, supra, and Brown, supra.

¶28    However, retroactive application of Guillaume was not allowed in Nichols, which came to us on a petition to amend Nichols' sentence.   Nichols, ¶ 17 (Nichols was also barred by the five-year statute of limitations on postconviction relief pursuant to § 46-21-102, MCA (1993), See Nichols, ¶ 21).  In Nichols, the Court applied the retroactivity analysis it "adopted" from Teague, supra.   Nichols, ¶ 10 (citing State v. Egelhoff (1995), 272 Mont. 114, 125-26, 900 P.2d 260, 267, rev'd on other grounds by Montana v. Egelhoff (1996), 518 U.S. 37, 116 S.Ct 2013, 135 L.Ed.2d 361).   Teague stands for the proposition that, on collateral review, a new procedural rule of constitutional law generally will not be applied retroactively, unless it meets one of the following exceptions: (1) if the rule "puts primary, private individual conduct beyond the power of the criminal law to proscribe;" or (2) if the "procedures used to convict the defendant are so implicit in the concept of ordered liberty as to constitute a watershed rule of criminal procedure." Nichols, ¶ 14.[1]

> [1]We Recently analyzed the retroactivity of new judicial rules in *State v. Goebel*
> and *State v. Giddings*, 2001 MT 155,¶¶ 7-17, 306 Mont. 83, ¶¶ 7-17, 31 P.3d 340,
> ¶¶ 7-17. However, our discussion in *Goebel* and *Giddings* was limited to the
> application of new judicial rules of criminal procedure. As explained below, we
> are concerned here with retroactive application of new rules of sustantive, as
> opposed to procedural, impact. Therefore, a different analysis than that applied in
> *Goebel* and *Giddings* is required here.

¶29    Applying Teague in Nichols, we concluded that Guillaume announced a new rule, but then determined neither Teague exception applicable.  We stated that Guillaume did not "put private, individual conduct beyond the power of the criminal law to proscribe.  Offenses committed with a dangerous weapon could still be prosecuted and punished after [Guillaume] just as they were before it was handed down.  Only the extent of the punishment was proscribed."  Nichols, ¶ 15.  In addition, we stated that "Guillaume did not set out a watershed rule of criminal procedure;" nor did it "announce[] a rule so implicit in the concept of ordered liberty that it requires retroactive application to cases not pending on direct review and to cases that were final when our opinion was issued."  Nichols, ¶ 16.

¶30    Whitehorn argues our analysis and application of the Teague exceptions in Nichols was erroneous and should be overruled.  Upon further consideration, we agree.

¶31    In  deciding Nichols, we erroneously limited our analysis to the question of whether the Guillaume holding fit the Teague exceptions.  The error occurred because the Teague limitations have historically applied to procedural rules, not substantive rules.  The rule we announced in Guillaume--that application of the weapons enhancement statute to a felony offense that requires the use of a weapon violates Montana's constitutional protection against double jeopardy--is by its own terms, a substantive rule.  Thus, we should not have applied the Teague limitations to Guillaume at all.

¶32    In Teague, the United States Supreme Court noted, "implicit in the retroactivity approach we adopt today, is the principle that habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to all defendants on collateral review through one of the two exceptions we have articulated." Teague, 489 U.S. at 316 (emphasis added).  The U.S. Supreme Court later reinforced this interpretation when it noted, "Teague by its terms applies only to procedural rules . . . ."  Bousley v. United States (1998), 523 U.S. 614, 620, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828, 838 (U.S. Supreme Court found Teague inapplicable to a situation where the Court decides the meaning of a criminal statute enacted by Congress).

¶33    Analysis of the distinction between procedural and substantive rules in the context of retroactivity can be traced to Justice Harlan's dissents in Mackey v. United States (1971), 401 U.S. 667, 675, 91 S.Ct. 1160, 1171, 28 L.Ed.2d 404, 410 (Harlan, J., concurring in part and dissenting in part) and Desist v. United States (1969), 394 U.S. 244, 256, 89 S.Ct. 1030, 1038, 22 L.Ed.2d 248, 259 (Harlan, J., dissenting).  These dissents form the basis of the rule later set forth in Teague.  See Teague, 489 U.S. at 310 (concluding, "we now adopt Justice Harlan's view of retroactivity for cases on collateral review").  When discussing the exceptions later adopted by the Teague Court, Justice Harlan noted his comments were "written only with new 'procedural due process' rules in mind," such as constitutional prohibitions of certain techniques or processes in enforcing "valid societal proscriptions on individual behavior." Mackey, 401 U.S. at 692 (Harlan, J., concurring in part and dissenting in part).  Unlike procedural rules, "[n]ew 'substantive due process' rules," defined as those that "place, as a matter of constitutional interpretation, certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, must . . . be placed on a different footing."  Mackey, 401 U.S. at 692 (Harlan, J., concurring in part and dissenting in part).

¶34    Prior to deciding Teague, the United States Supreme Court adopted the rationale offered by Justice Harlan's dissent in Mackey.  The U.S. Supreme Court gave greater retroactive application to substantive rules, noting the rights and guarantees found in the first eight amendments "do not relate to" procedural rules and "cannot, for retroactivity purposes, be lumped conveniently together in terms of analysis." Robinson v. Neil (1973), 409 U.S. 505, 508, 93 S.Ct. 876, 878, 35 L.Ed.2d 29, 32-33.  In Robinson, the U.S. Supreme Court retroactively applied its ruling in Waller v. Florida (1970), 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435, which declared that prosecution for the same crime in both state and municipal courts violated the double jeopardy clause.  See also, United States v. Johnson (1982), 457 U.S. 537, 550, 102 S.Ct. 2579, 2587, 73 L.Ed.2d 202, 214 (U.S. Supreme Court acknowledged the need to apply substantive rules retroactively when it stated: "the Court has recognized full retroactivity as a necessary adjunct to a ruling that a trial court lacked authority to convict or punish a criminal defendant in the first place") (holding that the decision in Payton v. New York (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L. Ed.2d 639, announcing a prohibition against warrantless, non-consensual, entry into a suspect's home, applied retroactively).

¶35    After rendering its decision in Teague, the United States Supreme Court continued to distinguish between substantive and procedural rules when determining retroactive application.  In examining whether a new rule concerning an unconstitutional punishment under the Eighth Amendment should be applied retroactively, Justice O'Connor, writing for the majority, applied the principles set forth by

Justice Harlan in Mackey. Penry v. Lynaugh (1989), 492 U.S. 302, 329-30, 109 S.Ct. 2934, 2952-53, 106 L.Ed.2d 256, 285. However, she did so by working within the two exceptions created by Teague.

¶36 Justice O'Connor emphasized the "substantive categorical guarantees accorded by the Constitution" and analogized the power to punish to the power law-making authorities have to proscribe certain conduct (e.g., the first Teague exception). Penry, 492 U.S. at 329-30. Relying on Justice Harlan's dissent in Mackey, that "[t]here is little societal interest in permitting the criminal process to rest at a point where it ought properly never to repose," Justice O'Connor expanded the first Teague exception to apply to substantive as well as procedural rules. Penry, 492 U.S. at 330 (citing Justice Harlan in Mackey). It appears she did so notwithstanding the analysis in Robinson (See ¶ 34 herein). Thus, under Penry, the first exception in Teague, "cover[s] not only rules forbidding criminal punishment of certain primary conduct but also rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." Penry, 492 U.S. at 330. As the Double Jeopardy Clause, by its very nature, protects persons from unconstitutional prosecutions and punishments, it logically follows that such a protection constitutes a "categorical guarantee . . . accorded by the Constitution." See Johnson v. Howard (11th Cir. 1992), 963 F.2d 342, 345 (citations omitted).

¶37 Rather than giving substantive rules retroactive application by excluding them from the Teague analysis altogether (as in Bousley, supra), Justice O'Connor expanded the first exception under Teague to apply to substantive matters, regardless of the procedures followed. See Penry, supra. Although the path taken by Justice O'Connor (lumping substantive rules into the procedural paradigm adopted in Teague and its progeny) is somewhat convoluted, the end result is consistent with the historical distinctions the U.S. Supreme Court has made between substantive and procedural rules, and the appropriateness of applying retroactivity to each. Justice O'Connor's analysis reaffirms the proposition that substantive rules should be given retroactive application.[2] Thus, a substantive rule is given retroactive effect either under the straightforward interpretation that Teague applies only to procedural rules, or by using the first exception of Teague, as expanded under Penry, to include constitutional bars on punishment, in addition to proscription of individual behaviors. Either way, the result is the same.

> [2]Interpreting the first *Teague* exception as appplying to substantive rules brings the *pre-Teague* dicisions concerning retroactivity (i.e., *Robinson* and *Johnson*) in harmony with the rule set forth in *Teague*, Which was previously limited to procedural rules (i.e., *Teague* and *Bousley*).

¶38 The Ninth Circuit has also recognized the distinction between substantive and procedural rulings, holding that Teague does not apply to new substantive decisions rendering invalid a statute under which the person seeking collateral relief was previously convicted and punished. Chambers v. United States (9th Cir. 1994), 22 F.3d 939, 942, vacated on other grounds, 47 F. 3d 1015 (9th Cir. 1995). See also, United States v. Stanwood (Or. 1994), 872 F.Supp. 791, 797 ("Teague applies only to new constitutional rules of criminal procedure and not to new substantive rules."). Thus, there is sound and ample authority underscoring the importance of distinguishing between substantive and procedural rules when considering whether to apply a rule change retroactively.

¶39    This Court has repeatedly recognized the importance of the double jeopardy protection. We have stated: "whether multiple punishments have been imposed in violation of a defendant's fundamental right to be free from double jeopardy brings into question the fundamental fairness of the proceedings and the integrity of the judicial process." State v. Weitzel, ¶ 43 (citing Brown, ¶ 12; Roullier, ¶ 25; and Aguilar, ¶ 13).

¶40    Moreover, as we have consistently held, "the rights contained in the Declaration of Rights, which include the rights guaranteed to an accused person in a criminal prosecution, are fundamental rights." State v. Clark, 1998 MT 221, ¶ 22, 290 Mont. 479, ¶ 22, 964 P.2d 766, ¶ 22 (citing Wadsworth v. State (1996), 275 Mont. 287, 299, 911 P.2d 1165, 1171-72). See also, Armstrong v. State, 1999 MT 261, ¶ 34, 296 Mont. 361, ¶ 34, 989 P.2d 364, ¶ 34; and MEIC v. Dept. of Environmental Quality, 1999 MT 248, ¶ 56, 296 Mont. 207, ¶ 56, 988 P.2d 1236, ¶ 56.

¶41    We now return to the current status of our case law in this area. We have allowed retroactive application of our Guillaume decision to those defendants whose cases were not yet final (i.e., Hart, Aguilar, and Weitzel), but refused to grant the same retroactive application to a defendant whose case was at a different, or post-appeal, procedural stage (i.e., Nichols). In his dissent in State v. Egelhoff, Justice Trieweiler addressed this illogical distinction when he noted that "selectively applying the Constitution to people who are similarly situated based merely on the circumstances or timing of their appearance in court is the antithesis of the judiciary's responsibility." State v. Egelhoff, 272 Mont. at 129, 900 P.2d at 269 (Trieweiler, dissenting in part). To illustrate the effect of the majority's decision in State v. Egelhoff to apply a principle of constitutional law to some and not others, Justice Trieweiler drew on Justice Harlan's dissent in Mackey: "Simply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule constitutes an indefensible departure from this model of judicial review." State v. Egelhoff, 272 Mont. at 130, 900 P.2d at 269 (Trieweiler, dissenting in part) (citing Mackey, 401 U.S. at 679 (Harlan, J., concurring in part and dissenting in part)).

¶42    We conclude it is illogical for this Court to refuse to extend constitutional protections to citizens simply because their claims are raised by collateral review rather than by way of direct appeal. Accordingly, we conclude that, in deciding Nichols, this Court erred in failing to recognize and apply the foregoing case law that distinguishes a procedural rule from a substantive rule when addressing retroactivity. However, we emphasize that we are overruling only our refusal in Nichols to give retroactive application of Guillaume. See Nichols, ¶¶ 10-17. We do not overrule our holding in Nichols that he was procedurally barred by § 46-21-102(1), MCA (1995), from bringing his postconviction petition. Nichols, ¶ 21. Nichols is accordingly overruled in part. Similarly, we overrule in part our holding in State v. Wells, 2001 MT 55, 304 Mont. 329, 21 P.3d 610, only to the extent that we held Wells was barred from raising a double jeopardy claim in a petition for postconviction relief pursuant to § 46-21-105(2),MCA, for failing to raise the issue on direct appeal. Wells, ¶ 12.

¶43    We reiterate that when a defendant is seeking postconviction relief, whether under Guillaume or otherwise, he or she is still required to timely file his or her petition pursuant to § 46-21-102, MCA. See Nichols, ¶ 20 (citation omitted).

¶44   When determining whether a petition for postconviction relief is timely, we look to the statute of limitations in effect at the time the petition was filed, not to the statute in effect at the time of the conviction.  Hawkins v. Mahoney, 1999 MT 82, ¶ 9, 294 Mont. 124, ¶ 9, 979 P.2d 697, ¶ 9 (citation omitted).   In 1997, the Legislature amended § 46-21-102, MCA, changing the statute of limitations for filing a petition for postconviction relief from five years to one year.  However, the Legislature specified that the amendment applied to proceedings in which the conviction became final either (a) after the effective date, April 24, 1997, or (b) during the twelve months prior to April 24, 1997, if the petition under Title 46, chapter 21, had been filed within the twelve months after April 24, 1997.  Hawkins, ¶ 10.  As Whitehorn was convicted on May 4, 1995, the amendment does not apply to his case.  Therefore we apply the five-year statute of limitations from § 46-21-102, MCA (1995).  Whitehorn filed his postconviction petition on December 3, 1999, less than five years after the date of his conviction.  Therefore, we agree with the District Court that Whitehorn was not barred from bringing his claim.

¶45   We emphasize here that our substantive analysis and decision in Guillaume is unaffected by this decision.  Application of Guillaume will continue to be limited to offenses which require proof of the use of a weapon--that is, where the defendant's punishment has already been enhanced by the use of that weapon.  See Guillaume, ¶ 18.  (Guillaume's charge, and therefore his punishment, was elevated from assault, a misdemeanor, to felony assault because he used a weapon; thus he was punished twice when his sentence was enhanced for the use of that same weapon.)  Our inquiry in Guillaume cases will continue to be: "whether the statutory definition of that [underlying] offense includes use of a weapon with the result that a defendant is punished twice for the same act(s), on the same required proof so as to constitute a double jeopardy violation."  State v. Park, 2001 MT 157, ¶ 16, 306 Mont. 98, ¶ 16, 30 P.3d 1062, ¶ 16.  Thus, we conclude that sentences on convictions for assault with a weapon, a felony, §§ 45-5-213(1)(a) and (b), MCA (2001),[3] and aggravated burglary, § 45-6-204(2), MCA, are the only offenses that may not be enhanced under § 46-18-221, MCA.[4]

[3]Formerly, §§ 45-5-202(2) (a) and (b), MCA, felony assault, which were changed to § 45-5-213, et al. in 1999.

[4]We note the 2001 Legislature amended Montana's weapons enhancement statue. § 46-18-221, MCA, to bring it into alignment with our holding in *Guillaume*.

¶46   This conclusion comports with previous decisions in which we have refused to expand Guillaume beyond its self-defined scope.  Double jeopardy protections are not violated when the weapons enhancement statute is applied to a conviction for criminal endangerment.  See  State v. Dunnette, 2000 MT 33, ¶ 13, 298 Mont. 208, ¶ 13, 996 P.2d 379, ¶ 13 (criminal endangerment does not require proof of the use of a weapon, nor does it increase a defendant's punishment for the use of a weapon) (citing State v. Keith, 2000 MT 23, 298 Mont. 165, 995 P.2d 966).  Nor is double jeopardy violated when a defendant's conviction for aggravated assault under § 45-5-202(1), MCA (1985), is enhanced by § 46-18-221.  State v. Charlo, 2000 MT 192, ¶ 16, 300 Mont. 435, ¶ 16, 4 P.3d 1201, ¶ 16 (aggravated assault does not require the use of a weapon as an element of the offense; it simply requires that a person "purposely or knowingly cause serious bodily injury to another").  Likewise, the imposition of an

additional sentence pursuant to the weapons enhancement statute to the underlying offense of mitigated deliberate homicide does not violate double jeopardy. Park, ¶ 17.

¶47    Further, a district court may apply the weapons enhancement statute to a conviction by accountability, as long as the underlying offense does not require use of a weapon. See State v. Hatten, 1999 MT 298, ¶ 54, 297 Mont. 127, ¶ 54, 991 P.2d 939, ¶ 54 (weapons enhancement statute applied properly to a defendant convicted of accountability for deliberate homicide where defendant actively participated with others in beating victim and was seen with a knife in his possession before and after the crime); and State v. Mazurkiewicz (1990), 245 Mont. 172, 799 P.2d 1066 (following conviction for accountability for robbery and deliberate homicide under felony-murder rule, additional sentence under weapons enhancement statute was upheld where defendant provided the gun that was used in commission of a crime). Similarly, this same principle extends to convictions for solicitation pursuant to § 45-4-101, MCA, conspiracy, pursuant to § 45-4-102, MCA, and attempt, pursuant to § 45-4-103, MCA, where the underlying offense(s) do not require the use of a weapon.

¶48    Finally, we caution that this Opinion does not implicate our decisions in State v. Goebel, 2001 MT 73, 305 Mont. 53, 31 P.3d 335; or State v. Giddings, 2001 MT 76, 305 Mont. 74, 29 P.3d 475, and more particularly, the ex post facto and double jeopardy claims which we recently discussed and resolved in State v. Goebel and State v. Giddings, 2001 MT 155, 306 Mont. 83, 31 P.3d 340, limited by Gundrum v. Mahoney, 2001 MT 246, 307 Mont. 96, 36 P.3d 890 (retroactive application of amendment to § 46-23-1012, MCA, did not violate the prohibition against ex post facto legislation); and Gonzales v. Mahoney, 2001 MT 259, ¶ 7, 307 Mont. 228, ¶ 7, 37 P.3d 653, ¶ 7 (Double Jeopardy was not violated when the State filed a second revocation petition after the first petition was voided under Goebel or Giddings).

¶49    In conclusion, we overrule this Court's holding in Nichols and subsequent cases, to the extent we limited application of Guillaume to those cases pending on direct review. We accordingly reverse the District Court's ruling denying Whitehorn relief pursuant to our holding in Guillaume. We remand this matter to the District Court for resentencing in accordance with our decision.

/S/PATRICIA COTTER

We Concur:

/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ TERRY N. TRIEWEILER
/S/ W. WILLIAM LEAPHART

Chief Justice Karla M. Gray, dissenting.

¶50    I respectfully dissent from the Court 's opinion. My two primary reasons for doing so are that the Court 1) improperly applies the "plain error" doctrine to allow Whitehorn to change his double jeopardy

theory on appeal from that presented to the District Court; and 2) fails to take into account that this is a postconviction relief proceeding to which certain statutes–in addition to the time-bar statute–and case law apply.

¶51 It is important to keep in mind the procedural underpinnings of this case. Whitehorn was sentenced on convictions entered on guilty pleas in 1995 and did not appeal. He sought review of his sentence by this Court's Sentence Review Division (SRD) and the sentence was modified. Whitehorn appealed the modification to this Court and, in 1996, we reversed a portion of the SRD's modification. In 1999, after our decision in Guillaume, Whitehorn moved for resentencing in the District Court in light of that decision and, while that motion remained pending, he petitioned for postconviction relief. The District Court determined the postconviction petition was timely, but concluded–under Nichols–that Whitehorn's case was final and, as a result, Guillaume could not be applied retroactively. The present case is before us on Whitehorn's appeal from the denial of his petition for postconviction relief.

¶52 Whitehorn argues on appeal that we should reverse our earlier adoption and application of the Teague retroactivity analysis in Egelhoff and Nichols. The Court recognizes that this is a change of theory on appeal, and that our general rule is that we will not consider such issues and theories because it is unfair to the trial court. The Court then notes, and I agree, that there are exceptions to the general rule, most notably the "common law plain error" exception. The Court then applies plain error to address Whitehorn's changed theory on appeal, ultimately overruling Nichols and subsequent cases in part, and holding the District Court erred in refusing to apply Guillaume to Whitehorn's case. It is my view that the Court improperly applies plain error in this case.

¶53 I submit at the outset that the Court's notion that the District Court's inability to "overrule" Nichols somehow negates Whitehorn's ability–and obligation–to preserve the issue that Nichols was wrongfully decided is disingenuous. Litigants frequently argue for changes in case law in district courts, as we are all aware, thereby preserving the issue for appeal. If the Court really means what it is saying–that is, that any and all arguments for a change in existing case law can be made for the first time in this Court– the Court has revolutionized the practice of law; the role of the district courts; rules, statutes and precedent requiring that issues and theories of law be raised in the trial court; and this Court's primary role as an appellate court.

¶54 Moreover, while the Court is correct that district courts cannot "overrule" a decision by this Court and theoretically are bound by our precedents, neither of these lofty principles prevent district courts from simply disagreeing with our decisions and refusing to follow them. While such cases are– thankfully and properly–rare, we have all seen them. Indeed, one such case is currently pending before us. There, the trial court stated, in denying a motion for a new trial:

> The jury did exactly what the Supreme Court said it couldn't do in Scarborough. Either the jury or the Supreme Court is wrong. It's not the jury.

In another recent case, a district court denied an estate's motion for summary judgment, concluding that a statute of limitations was unconstitutional. It reached that conclusion, in part, by adopting the

dissenting opinion in a case decided by this Court which mandated the opposite result. So much for the Court's reliance on lofty principles which should, but do not always, apply!

¶55   The Court also cites to Renner, Seyferth, Parker, Finley, Hart, Weitzel, Roullier and Brown for its reliance on applying plain error here, but those cases are distinguishable. In Renner, we rejected the plain error argument of a party in a civil case, citing Finley for the proposition that plain error typically applies "to criminal cases." Renner, ¶ 15. Similarly, in Seyferth–the Court's implication to the contrary notwithstanding–we declined to apply plain error review to reach constitutional issues raised for the first time on appeal in a case involving a driver's license suspension. Seyferth, 277 Mont. at 387. Finally, with regard to Parker, the only other civil case relied on by the Court, that opinion predates our lengthy and seminal clarification of the common law plain error doctrine in Finley and contains merely a bald statement without analysis that there was " 'plain error' of constitutional magnitude." Parker, 190 Mont. at 381. Flimsy grounds, indeed, for the Court's enormous expansion of plain error here, and radically at odds with both our commitment in Finley that we would use our inherent power of common law plain error review "sparingly" and our holding therein that we may, under certain circumstances, discretionarily review claimed errors that implicate a "criminal defendant's" constitutional rights, but will do so "only in the class of cases aforementioned." See Finley, 276 Mont. at 137-38 (emphasis added). Given our holdings in Finley, the Court is simply wrong in stating that we have not limited common law plain error review to cases involving criminal defendants.

¶56   The remaining cases on which the Court relies are all direct appeals in criminal cases. See Finley, 276 Mont. at 129; Hart, ¶ 1; Weitzel, ¶ 1; Roullier, ¶ 1; Brown, ¶ 1.  The present postconviction relief case is not a criminal case; it is a collateral attack which is civil in nature and "independent of the underlying criminal cause." State v. Garner, 1999 MT 295, ¶ 19, 297 Mont. 89, ¶ 19, 990 P.2d  175, ¶ 19 (citations omitted). Nor is it a direct appeal in a criminal case. Thus, the cases relied on by the Court for applying plain error are distinguishable and inapplicable in the present case.

¶57   The same is true of the arguments in favor of applying plain error in direct appeals of criminal cases, namely, that "review[ing] claimed errors that implicate a criminal defendant's fundamental constitutional rights," absent a timely objection, is necessary where failing to do so "may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." See Finley, 276 Mont. at 137 (emphasis added). If Whitehorn's fundamental constitutional rights were implicated at any point, it occurred during the sentencing phase of his criminal case. The time to raise those matters, under the common law plain error doctrine, was on appeal from that sentencing. Whitehorn did not appeal and, in my view, he thereby waived any right to plain error consideration by this Court.

¶58   Furthermore, in the cases relied on by the Court where plain error actually was raised, the defendant raised it. See Finley, 276 Mont. at 132; Hart, ¶¶ 49-53; Brown, ¶ 9. Here, Whitehorn does not, in fact, request common law plain error review on appeal of the denial of his postconviction proceeding and the Court offers no analysis of why it is appropriate for the Court to do so sua sponte. Since we have held that an appealing criminal defendant cannot wait until his or her reply brief to raise plain error (see State v. Raugust, 2000 MT 146, ¶¶ 18-19, 300 Mont. 54, ¶¶ 18-19, 3 P.3d 115, ¶¶ 18-19 (citation omitted)), on the theory that a party can never raise new matter in a reply brief because the

opposing party has no opportunity to respond, it is inconceivable to me that we intend to start down the path of raising it sua sponte, especially in light of our commitment in Finley to apply plain error sparingly.  See Finley, 276 Mont. at 38.

¶59    In short, because this is a civil case and Whitehorn does not request plain error review, I submit that our general rule of refusing to consider changes in legal theory on appeal must be applied here.  I dissent strenuously from the Court's enormous broadening of the plain error doctrine in this case.

¶60    My second area of primary concern is the Court's statement that it "is illogical . . . to refuse to extend constitutional protections to citizens simply because their claims are raised by collateral review rather than by way of direct appeal."  The Court is wrong.  It is entirely logical and, indeed, essential to refuse to extend the same protections to postconviction relief petitioners as to appealing criminal defendants because statutes and case law controlling  postconviction proceedings require it.  The Court totally fails to address these matters.

¶61     It cannot be disputed that a person who has been convicted of a criminal offense and who claims a sentence was imposed in violation of statutes or the constitution is entitled to do so via a postconviction proceeding only when he or she "has no adequate remedy of appeal."  See § 46-21-101, MCA.  In this case, Whitehorn had an adequate remedy of appeal of his sentence following his sentencing in 1995.  Unlike the defendant in Guillaume, he simply did not avail himself of that remedy.  Whitehorn did not appeal his sentence and, as a result, § 46-21-101, MCA, is an absolute bar to Whitehorn's challenge to his sentence in this postconviction case.

¶62    Moreover, when a person has been afforded the opportunity for a direct appeal of his or her conviction, grounds for relief that "could reasonably have been raised on direct appeal may not be raised, considered, or decided in a [postconviction] proceeding. . . ."  See § 46-21-105(2), MCA.  "Grounds for relief" include "all legal . . . issues that . . . could have been raised in support of the claim for relief."  Section 46-21-105(3), MCA.  Here, Whitehorn had the opportunity to appeal his sentence and could reasonably have raised in such an appeal the issue of whether the enhanced sentence for use of a weapon violated double jeopardy under the Montana Constitution.  We know this to be true because the defendant in Guillaume raised the issue in his direct appeal.  See Guillaume, ¶¶ 1, 2.  Thus, the plain language of § 46-21-105(2), MCA, also bars Whitehorn from raising the issue in his postconviction petition and this Court from considering and deciding it.

¶63    The Court totally ignores these statutes and the barriers they present in this case.  It also ignores our case law under these statutes.  We apply the procedural bars in the postconviction statutes consistently.  See, e.g., State v. Hanson, 1999 MT 226, ¶ 16, 296 Mont. 82, ¶ 16, 988 P.2d 299, ¶ 16 (citation omitted).  We do so–and must continue to do so– to prevent the abuse of postconviction proceedings by those who would substitute those proceedings for direct appeal and in order to preserve the integrity of the trial level proceedings and direct appeal.  See, e.g., Hanson, ¶ 16; Mothka v. State (1997), 281 Mont. 175, 177, 931 P.2d 1331, 1333; Kills on Top v. State (1995), 273 Mont. 32, 60, 901 P.2d 1368, 1386; Petition of Manula (1993), 263 Mont. 166, 169, 866 P.2d 1127, 1129; Petition of Evans (1991), 250 Mont. 172, 819 P.2d 156; Tecca v. McCormick (1990), 246 Mont. 317, 806 P.2d 11.  We also must continue to do so because the statutes controlling postconviction relief proceedings were

duly enacted by the Legislature and we must apply them by their terms (absent a successful constitutional challenge, which is not at issue in the present case).

¶64    The consequences of the Court's decision today are vast.  The integrity of both trial level proceedings and direct appeals have been eviscerated.  The statutes governing postconviction proceedings have been obliterated.  And, finally, the preclusion of federal habeas corpus review–often predicated on our consistent application of statutory postconviction procedural bars (see Kills on Top, 273 Mont. at 59, 901 P.2d at 1386)–has been lost, to the end that the State will be forced to expend ever more resources on such claims in the federal courts after matters have been resolved by this Court, often once on appeal and once via postconviction proceedings.

¶65    I dissent.


/S/KARLA GRAY


Justice Jim Rice joins in the foregoing dissenting opinion.


                    /
                              /S/JIM RICE