No. 99-033

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 23

298 Mont. 165

995 P. 2d 966

---

STATE OF MONTANA,

Plaintiff and Respondent,

v.

VICKIE KEITH,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Jeffrey Langton, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lisa B. Kauffman, Missoula, Montana

For Respondent:

Joseph P. Mazurek, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana; George H. Corn, Ravalli County Attorney, Michael Reardon, Deputy County Attorney, Hamilton, Montana

Submitted on Briefs: September 30, 1999

Decided: January 28, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1.Vickie Keith (Keith) was convicted by a jury in the District Court for the Twenty-first Judicial District, Ravalli County, of criminal endangerment, a felony, and sentenced to 10 years in the Women's State Prison in Billings. She received an additional 10 year sentence for the use of a weapon in connection with that offense. Keith appeals her conviction and sentence. We affirm.

¶2.We address the following issues on appeal:

¶3.. Whether an exception to the imposition of the mandatory minimum sentence under the weapon enhancement statute is applicable when the District Court imposes a term longer than the mandatory minimum.

¶4. Whether application of the weapon enhancement statute to a conviction for criminal endangerment subjected Keith to multiple punishments in violation of the double jeopardy clause.

**Factual and Procedural Background**

¶5.On the evening of May 7, 1998, Keith, her boyfriend Dean Yates (Yates), and a mutual friend, Richard Wolde (Wolde), went out to a local tavern to drink and dance. They returned to Keith's apartment around midnight. Keith lay down on a mattress on the living room floor and took a short nap. According to Yates, Keith was very inebriated. When Keith awoke from her nap, she was angry and hostile towards Yates and started saying "crazy sounding things." Wolde stated that Keith was acting "very illogical and irrational." Keith told Yates that she wanted him out of her life and she ordered him to leave. Yates agreed and began gathering his things while Keith went into her bedroom and locked the door.

¶6.As Yates and Wolde were leaving the apartment, they heard a gun shot from Keith's bedroom. Yates was attempting to break the lock on the door when they heard a second shot. When they entered the room, they found Keith sitting in a corner holding a .357 caliber handgun. Before they could reach her, Keith fired the gun a third time in the direction of the window. Yates grabbed the gun in an attempt to disarm Keith, but before he could get it away from her, a fourth shot was fired. This shot went through a desk and into a wall that separated Keith's apartment from the apartment next door.

¶7.In the next apartment, Keith's neighbor, Mary Snyder, awoke to the sounds of gun fire and muffled screams. Snyder called 911 and, while talking to the dispatcher, she heard the fourth shot hit her bedroom wall. When the officers arrived at the scene, they arrested Keith who proceeded to scream obscenities at the officers.

¶8.On May 19, 1998, the State charged Keith by Information with criminal endangerment, a felony, in violation of § 45-5-207, MCA. The Information also contained notice that Keith could receive an additional sentence for the use of a weapon pursuant to § 46-18-221, MCA.

¶9.On August 27, 1998, Keith filed a motion to add her psychiatrist, Dr. Noel Hoell, as a witness. Keith had been undergoing treatment with Dr. Hoell since 1990. The State objected to Keith's motion arguing that Keith failed to give notice that she would be relying on a defense of mental disease or defect and that Keith failed to disclose Dr. Hoell's report of his examination of her.

¶10.Keith subsequently filed a motion to retain Dr. Hoell as a medical expert. In an affidavit in support of the motion, Keith's counsel stated that the combination of stress, a change in Keith's medication, and the consumption of alcohol may have precluded Keith

from knowingly committing the crime. Counsel stated that while he did not believe that Keith had a mental disease or defect, "her mental thoughts and processes were impaired."

The District Court granted Keith's motion on September 9, 1998.

¶11.On September 11, 1998, the State filed a motion in limine regarding Dr. Hoell's testimony. The State argued that Dr. Hoell should be limited to testifying about the kinds of drugs that he prescribed for Keith; their known physiological effects when taken in conjunction with alcoholic beverages; any instructions Dr. Hoell gave Keith concerning the dosages of these drugs; and any warnings Dr. Hoell gave Keith concerning mixing these drugs with alcohol. The State maintained that since Keith failed to follow the statutory procedures for raising a mental disease or defect claim, defense counsel should be precluded from presenting evidence in that regard. The District Court granted the State's motion.

¶12.Trial commenced on September 21, 1998. At trial, Dr. Hoell testified that Keith had been under a great deal of stress the past year because her daughter had been molested and because of the molestation trial that followed. He explained that Keith was suffering from anxiety and depression and "general emotional turmoil" during this time. Dr. Hoell also testified that Keith was suffering considerable pain and discomfort because, a few months before the shooting incident, Keith had an altercation with someone in which her neck and shoulder were injured.

¶13.Dr. Hoell further testified that he had prescribed three medications for Keith; Prozac, Doxepin, and Valium. He stated that on the day of the shooting, Keith had contacted him regarding her Valium prescription. She told him that the generic Valium she was taking was not as effective as the brand name and she requested a different medication. Dr. Hoell gave Keith a new prescription. According to Wolde, although he was unsure whether Keith took any of this new medication, he was with Keith when she filled the prescription later that day.

¶14.As to the physiological effects of these drugs when taken in conjunction with alcoholic beverages, Dr. Hoell testified that while Prozac does not have any specific interaction with alcohol, alcohol mixed with Doxepin could cause sleepiness and confusion, and the combination of Valium and alcohol could cause sedation, confusion and agitation. Dr. Hoell also testified that he prescribed the Valium for Keith with the understanding that she would refrain from using alcohol.

¶15. On September 22, 1998, the jury found Keith guilty of criminal endangerment. The District Court ordered a presentence investigation report and subsequently scheduled a sentencing hearing for November 4, 1998.

¶16. At the beginning of the sentencing hearing, the District Court indicated that it would be willing to entertain the parties' positions on the mandatory minimum sentence under the weapon enhancement statute. To that end, defense counsel argued that the mandatory minimum sentence did not apply here because Keith was under a great deal of stress and she had ingested drugs and alcohol prior to the offense. The court responded that in order to waive the mandatory minimum sentence, there would have to be some evidence that Keith's mental capacity was significantly impaired. The court explained that under § 46-18-222(2), MCA, it could not give Keith the benefit of any type of voluntarily induced intoxicated or drugged state.

¶17. Defense counsel then requested a continuance to bring Dr. Hoell back to testify on the issue of mental impairment. The court refused stating that there was "no reason to waste public money to have an expert witness come back and say what he's already said." The court concluded that there was no evidence of mental impairment in this case sufficient to require waiving the mandatory minimum sentence.

¶18. The District Court sentenced Keith to 10 years in the Women's State Prison in Billings for the offense of criminal endangerment plus an additional 10 years for the use of a weapon in connection with that offense. The court subsequently suspended 15 years of Keith's sentence. Keith appeals her conviction and sentence.

## Issue 1.

¶19. Whether an exception to the imposition of the mandatory minimum sentence under the weapon enhancement statute is applicable when the District Court imposes a term longer than the mandatory minimum.

¶20. "This Court reviews a criminal sentence only for legality (i.e., whether the sentence is within the parameters provided by the statute)." *State v. Montoya*, 1999 MT 180, ¶ 15, 983 P.2d 937, ¶ 15, 56 St.Rep. 706, ¶ 15.

¶21. Section 46-18-221, MCA, the weapon enhancement statute, provides that a person who uses a weapon in the commission of an offense "shall, in addition to the punishment

provided for the commission of such offense, be sentenced to a term of imprisonment in the state prison of not less than 2 years or more than 10 years, except as provided in 46-18-222."

Section 46-18-222, MCA, provides, in pertinent part,

**Exceptions to mandatory minimum sentences and restrictions on deferred imposition and suspended execution of sentence.** Mandatory minimum sentences prescribed by the laws of this state . . . do not apply if:

(2) the offender's mental capacity, at the time of the commission of the offense for which the offender is to be sentenced, was significantly impaired, although not so impaired as to constitute a defense to the prosecution. However, a voluntarily induced intoxicated or drugged condition may not be considered an impairment for the purposes of this subsection.

¶22.Keith contends that, at the time of the crime, her mental capacity was impaired due to physical pain, mental anguish, high levels of stress, and the taking of prescription drugs and alcohol. She argues that although her mental state was not so diminished as to support a claim for mental disease or defect under § 46-14-312, MCA, her mental condition was "significantly impaired," thus she falls within the exceptions to mandatory minimum sentences as provided for in § 46-18-222(2), MCA.

¶23.While § 46-18-222(2), MCA, does permit the sentencing court to reject the mandatory minimum sentence if it determines that the defendant's mental capacity was significantly impaired during the commission of the offense, this Court has repeatedly held that this statute does not apply in cases where the maximum sentence or any sentence greater than the mandatory minimum is imposed. *State v. Zabawa* (1996), 279 Mont. 307, 317, 928 P.2d 151, 157 (citing *State v. Graveley* (1996), 275 Mont. 519, 524-25, 915 P.2d 184, 188, *overruled on other grounds by State v. Lane* (1998), 288 Mont. 286, 957 P.2d 9; *State v. Nichols* (1986), 222 Mont. 71, 82, 720 P.2d 1157, 1164*). See also State v. DeSalvo* (1995), 273 Mont. 343, 348, 903 P.2d 202, 205; *State v. Arlington* (1994), 265 Mont. 127, 166-67, 875 P.2d 307, 331; *State v. Stroud* (1984), 210 Mont. 58, 78, 683 P.2d 459, 469-70.

¶24.As the State points out, Keith's argument would only have merit if the District Court had intended to sentence Keith to less than the two-year mandatory minimum sentence and was prevented from doing so because it found that the exceptions under § 46-18-222,

MCA, did not apply. In this case, there is no indication that the District Court ever intended to sentence Keith to either the two-year mandatory minimum or to a period of time less than the two-year mandatory minimum, therefore, the exceptions are not applicable in this case.

¶25.Keith also argues that the District Court erred in failing to conduct a hearing prior to the imposition of sentence to determine the applicability of the mental impairment exception. Citing § 46-18-223, MCA, Keith argues that when the application of an exception provided for in § 46-18-222, MCA, is an issue, the court shall grant the defendant a hearing prior to the imposition of sentence to determine the applicability of the exception.

¶26.As § 46-18-223, MCA, states, only when "the application of an exception provided for in 46-18-222 is an issue," must the court grant the defendant a hearing. In this case, since the District Court sentenced Keith to the maximum term provided for in the weapon enhancement statute, the exceptions to the mandatory minimum sentence were not an issue, thus, no hearing was required.

¶27.Nevertheless, the District Court did hold a hearing on its own motion. Prior to the sentencing hearing itself, the court declared that it would entertain argument on exceptions to the mandatory minimum sentence. After listening to the State's position on this matter, the court heard Keith's claim that her mental capacity was impaired at the time of the offense. In support of this argument, Keith pointed to portions of Dr. Hoell's trial testimony regarding the stress Keith was under at the time of the crime and that Keith had ingested drugs and alcohol prior to the offense. The court also questioned Keith regarding her claim.

¶28.Although we have already stated that a hearing under the circumstances presented in this case was unnecessary, we conclude that, contrary to Keith's contentions, the District Court did hold a hearing sufficient to comply with § 46-18-223, MCA.

¶29.Keith also argues that the District Court erred in denying her request for a continuance of the sentencing hearing to allow Dr. Hoell to appear to testify regarding her mental capacity. The granting of a motion for continuance of a sentencing hearing is left to the sound discretion of the district court and this Court will not overturn the district court's decision unless an abuse of discretion prejudicing the movant is demonstrated. *State v. McPherson* (1989), 236 Mont. 484, 487, 771 P.2d 120, 122, *overruled on other grounds*

*by State v. Staat* (1991), 248 Mont. 291, 811 P.2d 1261.

¶30.Keith maintains that she wanted Dr. Hoell to explain how stress, combined with drugs and alcohol, could have impaired her mental capacities. However, as expressly stated in § 46-18-222, MCA, "a voluntarily induced intoxicated or drugged condition may not be considered an impairment" for the purposes of applying the exceptions under this statute. Therefore, the District Court would not have been able to consider Dr. Hoell's opinion regarding the impairment of Keith's mental capacity because her impairment was based in part on the alcohol and drugs she voluntarily consumed. Moreover, as the District Court noted, being under stress is not the same as having your mental capacity significantly impaired.

¶31.Accordingly, we hold that the District Court did not err in failing to apply the exceptions to mandatory minimum sentences, as set forth in § 46-18-222, MCA, in this case.

**Issue 2.**

¶32.Whether application of the weapon enhancement statute to a conviction for criminal endangerment subjected Keith to multiple punishments in violation of the double jeopardy clause.

¶33.Keith argues that the application of the weapon enhancement statute to her felony conviction for criminal endangerment violated her right to be free from multiple punishments for the same offense pursuant to this Court's recent holding in *State v. Guillaume*, 1999 MT 29, 293 Mont. 224, 975 P.2d 312. Keith contends that since her conviction for criminal endangerment was based on her conduct of firing a gun, she should not have been given an additional sentence for the use of that gun, because that would require punishing her twice for the same offense. Keith's reliance on *Guillaume* is misplaced.

¶34.Guillaume was convicted of felony assault in violation of § 45-5-202(2)(b), MCA (1995), which provided that a person commits the offense of felony assault if the person purposely or knowingly causes a "reasonable apprehension of serious bodily injury in another by use of a weapon." Guillaume had struck another individual with a hammer. The District Court sentenced Guillaume to 10 years in prison for the felony assault and an additional 5 years for the use of a weapon pursuant to § 46-18-221, MCA. *Guillaume*, ¶¶ 3-

4.

¶35. On appeal, Guillaume argued that the application of the weapon enhancement statute to the underlying crime of felony assault violated the double jeopardy clause of the Montana Constitution because, had he not used a weapon during the assault, he would only have been charged with misdemeanor assault under § 45-5-201(1)(d), MCA (1995). He argued that the only factor raising his charge from misdemeanor assault to felony assault was his use of a weapon. Therefore, he argued that the felony assault statute provides by its own terms for enhanced punishment for use of a weapon, and that application of the weapon enhancement statute to his conviction for felony assault effectively punished him twice for use of a weapon in violation of the double jeopardy clause. *Guillaume*, ¶ 9.

¶36. This Court agreed with Guillaume and held that the application of the weapon enhancement statute to felony convictions where the underlying offense requires proof of use of a weapon violates the double jeopardy provision of Article II, Section 25 of the Montana Constitution. *Guillaume*, ¶ 16. We further explained:

The only factor raising Guillaume's charge from misdemeanor assault to felony assault was his use of a weapon. We interpret this distinction between the two offenses, and the different penalties imposed by each offense, as the legislature's way of punishing a criminal defendant for use of a weapon in committing an assault. Thus, when the weapon enhancement statute was applied to Guillaume's felony assault conviction, Guillaume was subjected to double punishment for use of a weapon: once when the charge was elevated from misdemeanor assault to felony assault, and again when the weapon enhancement statute was applied. We agree with Guillaume that this form of double punishment is exactly what double jeopardy was intended to prohibit.

*Guillaume, ¶ 18.*

¶37. In the case before us on appeal, Keith was convicted of criminal endangerment pursuant to § 45-5-207(1), MCA. This statute provides: "A person who knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another commits the offense of criminal endangerment." Unlike the felony assault statute in *Guillaume*, the statute defining criminal endangerment does not require proof of the use of a weapon. Nor did the use of a weapon raise Keith's crime from a misdemeanor to a felony as in *Guillaume*.

¶38.Nevertheless, Keith argues that if she had not fired the gun she would not have been convicted of and received a 10-year sentence for the offense of criminal endangerment. She asserts that the additional 10-year sentence she received under the weapon enhancement statute is a double jeopardy violation because she has been punished twice for the use of a weapon as in *Guillaume*. As the State points out, if we were to accept Keith's argument, there would be a double jeopardy violation every time a court applied the weapon enhancement statute to a felony offense.

¶39.Keith misses the point of the double jeopardy analysis under *Guillaume*. That analysis is based on the statutory definition of the underlying offense, i.e., whether one of the elements of the offense requires proof of the use of a weapon. Criminal endangerment does not. The fact that Keith used a weapon when she committed that offense and was thus sentenced to an additional term under the weapon enhancement statute did not result in multiple punishment for the same offense because the offense of criminal endangerment, by its own terms, does not specifically increase a defendant's punishment for the use of a weapon. Hence, application of the weapon enhancement statute to the crime of criminal endangerment is not a double jeopardy violation.

¶40.Accordingly, we hold that the application of the weapon enhancement statute to Keith's conviction for criminal endangerment did not subject Keith to multiple punishments in violation of the double jeopardy provision of Article II, Section 25 of the Montana Constitution.

¶41.Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JIM REGNIER

Justice William E. Hunt, Sr., dissenting.

¶42. I dissent from the majority opinion. While I agree with the application of the weapon enhancement statute under certain circumstances, I believe its application in this instance is misplaced. The constitutional prohibition against double jeopardy is found in the Fifth Amendment and made applicable to the states through the Fourteenth Amendment. Article II, Section 25, of the Montana Constitution, provides the same protection. The provision against double jeopardy protects defendants from both *multiple punishments imposed at a single prosecution for the same offense*, as well as for multiple prosecutions for offenses arising out of the same transaction. *See State v. Guillaume*, 1999 MT 29, ¶ 8, 293 Mont. 224, ¶ 8, 975 P.2d 312, ¶ 8; *State v. Wells* (1983) 202 Mont. 337, 350, 658 P.2d 381, 388 (emphasis added).

¶43.While discouraging the use of a weapon in the commission of a crime is a valid goal, when viewing the statute's application here I cannot help but disagree with the result. From a common sense point of view, Keith has been sentenced to ten years for firing the gun, and then sentenced to ten years for firing the gun; one offense has resulted in two punishments. If Guillaume had not used a weapon, he could still have been charged with misdemeanor assault. If Keith had not fired the .357, there would be no charge at all.

¶44.I would hold that the application of the weapon enhancement statute to Keith's conviction for criminal endangerment did subject Keith to multiple punishments in violation of the double jeopardy provision of the Montana Constitution.

/S/ WILLIAM E. HUNT, SR.