No. 05-345

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 348

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

STEVEN LEO MATZ,

        Defendant and Appellant.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause DC-04-541,
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Brad L. Arndorfer, Arndorfer Law Firm, P. C., Billings, Montana

        For Respondent:

            Honorable Mike McGrath, Attorney General; Joslyn M. Hunt,
Assistant Attorney General, Helena, Montana

            Dennis Paxinos, County Attorney; Ed E. Zink, Deputy County
Attorney, Missoula, Montana

                        Submitted on Briefs:  May 24, 2006

                                  Decided:  December 27, 2006

Filed:

                              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Steven Leo Matz (Matz) appeals from the verdict and judgment entered by the Thirteenth Judicial District Court, Yellowstone County, finding him guilty of felony aggravated assault and enhancing his sentence for that offense with an additional five years pursuant to § 46-18-221, MCA, based upon the finding that he used a weapon in the commission of the offense. We affirm.

¶2 We consider the following issues on appeal:

¶3 (1) Did the District Court err in denying Matz's proposed jury instruction which would have required the State to prove that Matz did not act with justifiable use of force?

¶4 (2) Did Matz's sentence enhancement for using a weapon violate double jeopardy where his underlying conviction was for aggravated assault?

¶5 (3) Did the District Court err by giving a jury instruction that did not distinguish which form of serious bodily injury was being alleged?

¶6 (4) Did the District Court abuse its discretion by excluding evidence that the alleged victim had marijuana and a marijuana pipe in his pocket at the time of the altercation?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶7 Steve Andersen (Andersen) and his wife, Amber Andersen (Amber), managed the Village Inn Pizza Parlor (Village Inn) in Billings, Montana. On the night of May 30, 2004, at approximately ten o' clock in the evening, while taking a break from cleaning, Andersen noticed an individual on a bicycle cut through the parking lot, which was situated behind the restaurant. Knowing that there was only one way out of the parking

2

lot, Andersen, joined by Amber, waited for the individual to ride back out. The individual, who turned out to be Matz, was riding his bicycle for exercise and in search of neighborhood dumpsters. Matz frequented dumpsters behind neighborhood pizza restaurants to recover discarded pizza, which he fed to his neighbor's dogs.

¶8 Andersen and Amber, after waiting a minute or two, walked out to the parking lot and found Matz astride his bicycle while holding up the lid of the dumpster and perusing its contents. Andersen told Matz that he was on private property, to get out of the dumpster, and threatened to call the police. Matz indicated that he had a right to be there because the dumpster was public domain. Andersen issued another warning for Matz to leave the property and requested Amber to call the police, but the testimony about what occurred thereafter was conflicted.

¶9 A business videotape disclosed the parties' initial meeting but did not capture the following altercation between Andersen and Matz. Matz testified that Andersen was belligerent and, as Matz rode his bicycle past Andersen to depart the premises, Andersen attacked him and knocked him off his bicycle and onto his back. Being susceptible to a shoulder injury and afraid he would be kicked in his shoulder, Matz testified that he pulled a gun he was carrying to protect himself, explaining that he is a licensed firearm dealer and that he carried the gun to defend himself while riding his bicycle in the evening. In contrast, Andersen testified that, after telling Amber to call the police, Matz began taunting Andersen while Andersen implored Matz to leave. Matz responded by riding his bicycle over to within some two and a half feet of Andersen, pulling the gun from his pocket, and asking, "What do you think of this, tough guy?"

3

¶10     Seeing a gun pointed at his head, Andersen grabbed it with both of his hands in an effort to take it away.  Struggling, both men fell to the ground.  Matz pushed the gun barrel into Andersen's side, while Andersen tried to point it away from his body.  During the struggle Matz fired the gun twice, with one shot penetrating Andersen's stomach and the other grazing his arm, but this did not end the battle. Hearing the gunshots, Amber ran outside and, seeing Matz on top of her husband, jumped onto Matz's back and began choking him in an effort to remove him from Andersen.  When Andersen yelled for Amber to grab the gun, Amber reached around the back of Matz and grabbed the four hands that were already clutching the gun, and all three of the parties struggled to control the gun.  When, during the mêlée, Amber noticed that the gun had become pointed toward Matz beneath her, and thinking that her husband may have been mortally wounded, she unsuccessfully attempted to discharge the firearm into Matz.  Quickly responding police officers found the parties thus engaged and broke up the struggle.

¶11     The State filed its information charging Matz with aggravated assault.  A jury trial was held which ended with Matz moving for and being granted a mistrial.  A second trial in January 2005 resulted in a conviction.  Prior to sentencing, Matz filed a "motion to strike and dismiss claim for weapon enhancement penalty," seeking to deny the State's request for a sentence enhancement, which the State had first asserted in the information. The District Court denied this motion, and Matz was sentenced to fifteen years in the Montana State Prison and an additional five years pursuant to § 46-18-221, MCA, because he was found to have used a weapon while engaged in the commission of the underlying offense of aggravated assault.  Matz appeals.

4

¶12    *(1) Did the District Court err in denying Matz's proposed jury instruction which would have required the State to prove that Matz did not act with justifiable use of force?*

¶13    "We review claims of instructional error in a criminal case to determine whether the jury instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case." *State v. DuBray*, 2003 MT 255, ¶ 88, 317 Mont. 377, ¶ 88, 77 P.3d 247, ¶ 88 (citing *State v. Long*, 274 Mont. 228, 232, 907 P.2d 945, 947 (1995)).  "Since a trial court has broad discretion when instructing a jury, reversible error will occur only if the jury instructions prejudicially affect the defendant's substantial rights." *State v. Maloney*, 2003 MT 288, ¶ 14, 318 Mont. 66, ¶ 14, 78 P.3d 1214, ¶ 14 (quoting *State v. Strauss,* 2003 MT 195, ¶ 47, 317 Mont. 1, ¶ 47, 74 P.3d 1052, ¶ 47).

¶14    Matz's proposed jury instruction stated: "You are instructed [that] the Defendant, Steven Leo Matz, is not required to prove self-defense or justification.  The State is required to prove beyond a reasonable doubt that justification or self-defense does not exist in this case."  Matz first argues that the District Court erred when it refused this proposed instruction because requiring a defendant to bear the burden of proof is unconstitutional.  He argues it is only logical that when there are issues of self-defense, as here, the State must be required to prove beyond a reasonable doubt that justification or self-defense does not exist.  Matz asserts this Court has not expressly overturned *State v. Azure*, 181 Mont. 47, 591 P.2d 1125 (1979), wherein the Court held that a defendant's proffered instruction that "the State must prove the absence of justification [for using force in self-defense] beyond a reasonable doubt" was a correct statement of the law.

5

*Azure*, 181 Mont. at 54, 591 P.2d at 1130.  Therefore, he argues, it is still proper to instruct a jury that the prosecution bears the burden of proving lack of justification for self-defense beyond a reasonable doubt when this issue is raised.

¶15     The State argues that while Matz may be correct that this Court has not expressly overruled its decision in *Azure*, its applicability has certainly been called into question and cannot stand beside more recent cases, such as *State v. Daniels*, 210 Mont. 1, 682 P.2d 173 (1984), wherein this Court noted the many cases challenging self-defense or justifiable use of force instructions it had decided.  The *Daniels* Court then stated:

> From these cases the true rule can be drawn: The State has the burden of proving beyond a reasonable doubt every element of the offense charged, or any lesser-included crime within such charge; the defendant if he raises an affirmative defense has the burden of producing sufficient evidence on the issue to raise a reasonable doubt of his guilt . . . .

*Daniels*, 210 Mont. at 16, 682 P.2d at 181.  The State notes that Matz raised justifiable use of force as an affirmative defense to the charge and that, therefore, he bore the burden of producing sufficient evidence to establish the defense.

¶16     We agree with the State that *Azure*'s statement, quoted above, approving a jury instruction which placed the burden upon the State to establish the absence of justification for use of force, is no longer good law.  Indeed, we have previously explained that this was the effect of our holding in *Daniels.*  In *State ex rel. Kuntz v. Thirteenth Jud. Dist.,* 2000 MT 22, ¶ 42, 298 Mont. 146, ¶ 42, 995 P.2d 951, ¶ 42, we noted that "[a]lthough not expressly holding so, *Daniels* overturned a line of case law, notably *State v. Graves* (1981), 191 Mont. 81, 622 P.2d 203, and *State v. Azure* (1979), 181 Mont. 47, 591 P.2d 1125, that had previously held that jury instructions stating that

6

the State had the burden to prove an absence of justification beyond a reasonable doubt were proper." We also cited *State v. Gratzer*, 209 Mont. 308, 318, 682 P.2d 141 (1984), for this proposition.

¶17 Matz raised justifiable use of force as his affirmative defense to the shooting. Therefore, it was properly and constitutionally Matz's burden at trial to produce sufficient evidence to raise a reasonable doubt of his guilt based on his justifiable use of force defense, and the State was not obligated to prove that Matz did not act with such justification. *Daniels*, 210 Mont. at 16, 682 P.2d at 181. The District Court properly instructed the jury to that effect and appropriately denied Matz's proffered instruction.

¶18 *(2) Did Matz's sentence enhancement for using a weapon violate double jeopardy where his underlying conviction was for aggravated assault?*

¶19 This Court reviews a district court's imposition of sentence for legality. When the issue concerns "whether the district court violated the defendant's constitutional rights at sentencing, the question is a matter of law which we review *de novo* to determine whether the district court's interpretation of the law is correct." *State v. Mason*, 2003 MT 371, ¶ 19, 319 Mont. 117, ¶ 19, 82 P.3d 903, ¶ 19 (citing *State v. Bedwell,* 1999 MT 206, ¶ 4, 295 Mont. 476, ¶ 4, 985 P.2d 150, ¶ 4; *State v. Guillaume,* 1999 MT 29, ¶ 7, 293 Mont. 224, ¶ 7, 975 P.2d 312, ¶ 7).

¶20 Matz argues that his sentence of fifteen years for aggravated assault and the sentence enhancement of five years for use of a weapon during the commission of the aggravated assault is in violation of the prohibition against double jeopardy found at Article II, Section 25, of the Montana Constitution as interpreted in *State v. Guillaume,*

7

1999 MT 29, 293 Mont. 224, 975 P.2d 312. Matz challenges the District Court's reliance on the statement made in *State v. Whitehorn*, 2002 MT 54, ¶ 45, 309 Mont. 63, ¶ 45, 50 P.3d 121, ¶ 45, that the only two offenses where the use of a weapon enhancement may not be used are assault with a weapon and aggravated burglary. Matz argues it is illogical to claim that there is a distinction between the charge of assault with a weapon and the charge at issue here, aggravated assault, when the aggravated assault has occurred with the use of a weapon, because, as a practical matter, very few cases of aggravated assault are without the use of a weapon.

¶21 The State argues that the use of a weapon is not an element of aggravated assault as charged against Matz, thus allowing Matz's sentence to be enhanced for using a weapon. The State contends that application of the weapon enhancement statute to a conviction in which the underlying offense does not require proof of use of a weapon does not constitute a double jeopardy violation, citing *State v. Keith*, 2000 MT 23, ¶ 39, 298 Mont. 165, ¶ 39, 995 P.2d 966, ¶ 39, wherein we approved a weapon enhancement upon a sentence for criminal endangerment. The State maintains that an offense which does not include use of a weapon as an element, but which nonetheless occurred by use of a weapon, is fundamentally different than an offense that actually includes the use of a weapon as an element, such as assault with a weapon and aggravated burglary. The State notes that Matz concedes that not all aggravated assaults occur with use of a weapon, and therefore this Court's statement in *Whitehorn*, that the offenses of assault with a weapon and aggravated burglary were the only two offenses which could not be enhanced for use of a weapon, is correct.

8

¶22     Montana's weapon enhancement statute, § 46-18-221(1), MCA, provides that:

> a person who has been found guilty of any offense, other than an offense in which the use of a weapon is an element of the offense, and who, while engaged in the commission of the offense, knowingly displayed, brandished, or otherwise used a firearm, destructive device, as defined in 45-8-332(1), or other dangerous weapon shall, in addition to the punishment provided for the commission of the underlying offense, be sentenced to a term of imprisonment in the state prison of not less than 2 years or more than 10 years, except as provided in 46-18-222.

¶23     This Court ruled in *Guillaume,* ¶ 16, that application of the weapon enhancement to an offense that itself requires proof of the use of a weapon violates Montana's constitutional protection against double jeopardy.  A double jeopardy analysis under *Guillaume* is based upon the statutory definition of the underlying offense, i.e., whether one of the elements of the offense requires proof of the use of a weapon.  *See Keith*, ¶ 39.

¶24     Matz was charged of aggravated assault under § 45-5-202(1), MCA, which requires that an individual "purposely or knowingly causes serious bodily injury to another."  Pursuant thereto, the jury was directed in Instruction No. 13 that: "[t]o convict the Defendant of aggravated assault, the State must prove the following elements: (1) [t]hat the Defendant caused serious bodily injury to Steve Andersen; and (2) [t]hat the Defendant acted purposely and knowingly."  Then, the jury was further instructed, in Instruction No. 29, regarding the need to enter a separate finding regarding Matz's use of a weapon:

> [t]he State has alleged that in committing the offense of Aggravated Assault, the Defendant used a firearm or dangerous weapon.  Whether the Defendant used a firearm or dangerous weapon in the commission of the offense for which the Defendant is being tried must be proved by the State by proof beyond a reasonable doubt. *This is a separate finding by you, independent of the issue of whether the Defendant is guilty of the offense of Aggravated Assault.  You need not find the Defendant used a firearm or*

9

*dangerous weapon unless you first determine beyond a reasonable doubt that the Defendant committed the offense of Aggravated Assault.* [Emphasis added.]

¶25 Matz's use of a weapon was not an element of the offense of aggravated assault. The jury was instructed to make an additional, "separate finding," which was used by the District Court to impose the sentence enhancement. Thus, it cannot be said that Matz received multiple punishments for the same act or crime.

¶26 According to the analysis required under our case law, it is clear that the District Court did not err in enhancing Matz's sentence for use of a weapon where he was found guilty of aggravated assault under § 45-5-202, MCA, and was separately found by the jury to have used a weapon in the commission of that offense. Accordingly, the application of the weapon enhancement statute to Matz's sentence for aggravated assault did not subject Matz to a punishment in violation of the double jeopardy provision of Article II, Section 25, of the Montana Constitution.

¶27 *(3) Did the District Court err by giving a jury instruction that did not distinguish which form of serious bodily injury was being alleged?*

¶28 We review a jury instruction in a criminal case to see whether the instruction fully and fairly instructed the jury on the law applicable to the case. *DuBray*, ¶ 88 (citing *Long,* 274 Mont. at 232, 907 P.2d at 947). "Since a trial court has broad discretion when instructing a jury, reversible error will occur only if the jury instructions prejudicially affect the defendant's substantial rights." *Maloney*, ¶ 14 (quoting *Strauss,* ¶ 47).

¶29 Matz offers a very brief argument that his constitutional right to an unanimous verdict was violated by the instructions given to the jury, citing *State v. Weldy*, 273 Mont.

10

68, 902 P.2d 1 (1995). In *Weldy*, the defendant was charged with felony assault under two alternative statutory subsections. The alternatives were not alternative means of satisfying one common element, but, rather, set forth separate offenses. *Weldy*, 273 Mont. at 78, 902 P.2d at 7. Because the verdict form in *Weldy* did not ask the jury to specify which type of felony assault served as the basis for its finding, this Court concluded that the defendant's constitutional right to a unanimous verdict was not protected by the jury instructions or the jury verdict form. *Weldy*, 273 Mont. at 78, 902 P.2d at 7. Matz argues that because the jury instruction offered in this case defining serious bodily injury did not distinguish which form of serious bodily injury was being alleged, it similarly violated his right to a unanimous verdict.

¶30    The State responds that, while there are alternative ways of defining serious bodily injury under § 45-2-101(66), MCA—namely, risk of death, serious permanent disfigurement, or an expected result of serious permanent disfigurement—these alternate definitions do not represent separate elements or offenses. Thus, the State contends that a specific unanimity instruction was not necessary because the jurors had already been instructed to find a unanimous verdict as to the charge of aggravated assault, which included the alternative means of satisfying the single element of serious bodily injury. We agree.

¶31    "[L]egislatures frequently enumerate alternative means of committing a crime without intending to define separate elements of separate crimes . . . ." *Weldy*, 273 Mont. at 77, 902 P.2d at 6 (quoting *Schad v. Arizona,* 501 U.S. 624, 636, 111 S. Ct. 2491, 2499). In *Kills on Top v. State,* 273 Mont. 32, 901 P.2d 1368 (1995), we cited *Schad* for

11

this proposition and held that the alternatives set forth in the aggravated kidnapping statute represented different means of committing the same offense, rather than separate offenses. *Kills on Top*, 273 Mont. at 56, 901 P.2d at 1384.

¶32     This case requires the same outcome because the alternative definitions set forth in § 45-2-101(66), MCA, merely describe different ways or means of seriously injuring another while committing the offense, and do not define different offenses or different elements of one offense. Matz was charged with only one criminal offense, with one set of elements thereof. Therefore, the District Court did not abuse its discretion in instructing the jury with regard to unanimity, and Matz's constitutional rights were not implicated thereby.

¶33     *(4) Did the District Court abuse its discretion by excluding evidence that the alleged victim had marijuana and a marijuana pipe in his pocket at the time of the altercation?*

¶34     "A district court has broad discretion in determining the relevance and admissibility of evidence." *State v. Hicks*, 2006 MT 71, ¶ 19, 331 Mont. 471, ¶ 19, 133 P.3d 206, ¶ 19 (citing *State v. Flowers,* 2004 MT 37, ¶ 19, 320 Mont. 49, ¶ 19, 86 P.3d 3, ¶ 19). Therefore, this Court will not overturn a district court's evidentiary ruling absent a showing of abuse of discretion. *Hicks,* ¶ 19. "A district court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *State v. Riggs*, 2005 MT 124, ¶ 18, 327 Mont. 196, ¶ 18, 113 P.3d 281, ¶ 18 (citing *State v. Weldele,* 2003 MT 117, ¶ 72, 315 Mont. 452, ¶ 72, 69 P.3d 1162, ¶ 72).

12

¶35    When Andersen was taken to the hospital after the altercation, a blood test was conducted that indicated he had a blood alcohol content of .028. The defense was allowed to cross-examine Andersen about his drinking that evening, but when the defense sought to introduce the marijuana and marijuana pipe found on Andersen that night, the State objected on relevance grounds. The District Court, citing this Court's holdings in *State v. Gleim,* 17 Mont. 17, 41 P. 998 (1895), and *State v. Sorenson,* 190 Mont. 155, 619 P.2d 1185 (1980), excluded the evidence, because Matz had not demonstrated that Andersen was under the influence of marijuana at the time of the incident.

¶36    Matz initially argues that this evidence was highly relevant to his self-defense theory, because the marijuana may have suggested why Andersen acted in the manner Matz had alleged—that is, attacking Matz and knocking him off his bicycle. The State responds that such a connection between the marijuana and Andersen's behavior, without more, is entirely speculative, but, additionally, that Matz did not offer the evidence for this purpose at trial. Matz's relevance argument having not been made at trial, we need not consider it further.

¶37    At trial, Matz argued that the

> only thing this evidence does is prove that at the time these incidents happened, these were in his pocket. I have no proof beyond that, intend to offer it as that. But that, those are facts that are there. I think we are entitled to present the scene of the crime, what happened, who had what.

Thus, Matz essentially intended to impeach Andersen's credibility by reason of Andersen's possession of the marijuana. Matz argues that this was also a proper purpose

13

pursuant to M. R. Evid. 404(a)(2), which permits introduction of character evidence concerning a victim.

¶38    M. R. Evid. 404(a)(2) provides that evidence "of a pertinent trait of character of the victim of the crime" may by offered by an accused.  However, Matz did not offer evidence of any "pertinent trait" about Andersen, only the marijuana he possessed. About such evidence, this Court held in *Gleim,* and reaffirmed in *Sorenson,* "that the mere use of narcotics is not admissible to impeach witness credibility 'unless it is proposed to show that the witness was under the influence of the drugs at the time the events happened about which she testified.'" *Sorenson*, 190 Mont. at 166, 619 P.2d at 1191 (citing *Gleim*, 17 Mont. at 31, 41 P. at 1001).  Here, Matz laid no foundation tending to show that Andersen was under the influence of drugs at the time of the events in question. Given Matz's failure to lay that foundation, exclusion of the evidence for the reason offered was not an abuse of discretion.

¶39    Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER

14