05-627

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 245

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

KIRK WAYNE SPENCER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DC 04-26,
Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         R. Allen Beck, Attorney at Law, Lewistown, Montana

      For Respondent:

         Honorable Mike McGrath, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana

         Thomas P. Meissner, County Attorney, Lewistown, Montana

         Submitted on Briefs:  July 11, 2007

         Decided:  September 25, 2007

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Kirk Wayne Spencer (Spencer) appeals from his conviction in the Tenth Judicial District, Fergus County, of sexual intercourse without consent with his stepdaughter. We affirm.

¶2     We restate the issues as follows:

¶3     Did the introduction of S.S.'s hearsay statements violate Spencer's Sixth Amendment right to confrontation?

¶4     Did the District Court fail to comply with § 46-16-220, MCA, regarding the admissibility of child hearsay?

¶5     Did the District Court err in excluding Dr. Scolatti's videotaped testimony?

## BACKGROUND

¶6     Bill and Lisa Weaver became foster parents of Spencer's infant daughter, T.S., twenty-two-month-old daughter, R.S., and three-and-a-half-year-old stepdaughter, S.S., on April 2, 2004. Shortly after beginning foster care, Lisa repeatedly observed S.S. and R.S. exhibiting sexualized behavior, such as masturbating, trying to touch other's breasts and genitals, trying to insert toys and other objects into their vaginas, and sexually playing with toys, dolls, T.S., and one another.

¶7     In May 2004, the Weavers informed Roger Johnson, a social worker with the Department of Public Health and Human Services (DPHHS), of the girls' behavior, and he referred them to Dr. Nora Gerrity, a pediatrician, to determine whether the children had been abused. Dr. Gerrity physically examined R.S. and S.S. and discovered slight

2

irregularities in R.S.'s hymen and a full transection in S.S.'s hymen, consistent with a penetrating injury.

¶8 Following the examinations with Dr. Gerrity, R.S. and S.S. began seeing Maggie Moffatt, a licensed clinical professional counselor. During the counseling sessions, S.S. made several statements indicating that Spencer had sexually abused S.S. Ms. Moffatt reported these statements to Johnson, who then reported this information to law enforcement. S.S. made similar statements to Lisa Weaver, S.S.'s foster mother.

¶9 The State charged Spencer with sexual intercourse without consent on June 8, 2004. The State later added a second count of sexual intercourse without consent for the alleged sexual abuse of R.S. Spencer pled not guilty to both counts.

¶10 The State filed on September 29, 2004, its first notice of intent to introduce S.S.'s hearsay statements made to Ms. Moffatt, if S.S. was unavailable for trial. The State later filed a second and third notice to introduce S.S.'s hearsay statements made to Ms. Moffatt and Lisa Weaver. At an evidentiary hearing on January 3, 2005, the State and Spencer stipulated that S.S. would be "unavailable" to testify. Following briefing on the hearsay statements' admissibility, the District Court ruled that S.S.'s hearsay statements could be admitted through the testimony of Ms. Moffatt and Lisa Weaver. The State then filed a fourth notice of intent to introduce S.S.'s hearsay statements made to Ms. Moffatt; this motion was orally granted at trial. At trial, the District Court also granted the State's motion to exclude video testimony of Dr. Michael Scolatti, a licensed clinical psychologist, whose testimony indicated that Spencer did not meet the diagnostic criteria of a pedophile. Spencer's jury trial began March 14, 2005.

¶11 Ms. Moffatt testified about several statements S.S. made regarding sexual abuse and Spencer. Moffatt testified that on one occasion, in response to a question about naps, S.S.'s "'eyes got really big and she said Kirk makes me rest on the couch and then he puts his potty thing inside me.' She says 'right here' and she points to her private area with her finger, 'and it hurts really lots.'" Ms. Moffatt testified that S.S. told her that Kirk was "my dad." According to Ms. Moffatt, S.S. referred to "Kirk" or "my dad or my daddy" when discussing sexual behavior. Ms. Moffatt further testified that S.S. claimed that no one except her dad had ever touched her that way and that, "Daddy told me not to tell anyone what he did." Ms. Moffatt also testified that S.S. related instances of Spencer performing oral sex on S.S. and R.S. Ms. Moffatt testified that S.S.'s statements were unexpected and that she had not used leading questions or coaching techniques to elicit S.S.'s responses.

¶12 Lisa Weaver testified that on one occasion when Lisa was tucking S.S. in for bed, S.S. spontaneously stated that her "my daddy, my other daddy, stuck his pee-er in me and it hurt real bad[.]" Lisa testified that she understood "other daddy" to mean Spencer. On another occasion, while S.S. and T.S. were playing in their play tent, Lisa overheard S.S. say, "[n]ow, [T.S.], you lie down like this. It doesn't hurt - - this is how Kirk does it[.]" Lisa testified that she opened the tent and saw T.S. lying on her back with her legs lying wide open.

¶13 The jury found Spencer guilty of sexual intercourse without consent with S.S. and not guilty of sexual intercourse without consent with R.S. The court sentenced Spencer to thirty-five years in Montana State Prison. Spencer appeals his conviction.

4

¶14 We review de novo a district court's interpretation of the Sixth Amendment. *State v. Mizenko*, 2006 MT 11, ¶ 8, 330 Mont. 299, ¶ 8, 127 P.3d 458, ¶ 8. We review a district court's evidentiary rulings for abuse of discretion. *Mizenko*, ¶ 8. A court abuses its discretion when it acts arbitrarily, without employing conscientious judgment, or "exceeds the bounds of reason, resulting in substantial injustice." *State v. Matz*, 2006 MT 348, ¶ 34, 335 Mont. 201, ¶ 34, 150 P.3d 367, ¶ 34.

## DISCUSSION

¶15 **I** **Did the introduction of S.S.'s hearsay statements violate Spencer's Sixth Amendment right to confrontation?**

¶16 Spencer claims that the District Court incorrectly ruled that S.S.'s statements to Ms. Moffatt and Lisa Weaver were non-testimonial and thus implicated Montana hearsay law, rather than the Sixth Amendment. The Sixth Amendment of the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees criminal defendants the right to be confronted with the witnesses against them. Testimonial hearsay statements are inadmissible unless the declarant is "unavailable" for trial and the defendant had a prior opportunity for cross-examination. *Crawford v. Wash.*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004). The Sixth Amendment's Confrontation Clause applies only to testimonial hearsay. *Davis v. Wash.*, ___ U.S. ___, 126 S. Ct. 2266, 2274-75 (2006).

¶17 We discussed in *Mizenko* what constitutes a testimonial statement. In general, a declarant's statements are presumed testimonial if they are knowingly made to a police

5

officer or government agent. *Mizenko*, ¶ 23. A statement is presumed non-testimonial, however, if the declarant had "objective reason to believe" that the statement served only "to avert or mitigate an imminent or immediate danger" and the agent receiving the statement lacked intent to create evidence. *Mizenko*, ¶ 23. A statement made to a non-governmental agent is non-testimonial *unless* the declarant had "clear reason to believe that the statement would be used in court as substantive evidence against the defendant[.]" *Mizenko*, ¶ 23. Thus, whether the declarant's statement was to a governmental agent or to a non-governmental agent determines which standard applies.

¶18 Spencer claims that Ms. Moffatt and Lisa Weaver were acting under color of law as State investigators for the purpose of criminally prosecuting him. Spencer bases this assertion primarily on the fact that foster parents and social workers are statutorily required to report child abuse or neglect to DPHHS. Section 41-3-201, MCA. Spencer further asserts that law enforcement waited for and completely relied on results from Ms. Moffatt's interviews with S.S. and R.S. to identify Spencer. Based on these assertions, Spencer claims that his criminal prosecution is the result of a "joint investigation" by law enforcement, the Fergus County Attorney, DPHHS, Ms. Moffatt, and the Weavers. Spencer further argues that because S.S.'s statements to Ms. Moffatt and Lisa Weaver were made during this "joint investigation," the statements are testimonial. We disagree.

¶19 Though we can conceive of factual circumstances that could support an "under color of law" argument, Spencer has offered scant evidence to support his conclusory statements. Spencer is correct that § 41-3-201, MCA, requires foster parents and social workers to report suspected child abuse or neglect. In addition to foster parents and

6

social workers, the statute also requires reporting by physicians, residents, interns, and other hospital staff; nurses, osteopaths, chiropractors, podiatrists, medical examiners, coroners, dentists, optometrists, and other health or mental health professionals; religious healers; school teachers and school employees; day-care facility staff; and, clergy members, among others. Section 41-3-201, MCA. There is no indication, however, that the Legislature intended to deputize this litany of professionals and individuals into law enforcement, and we refuse to attach that significance to the duty to report.

¶20 Moreover, the trial testimony belies Spencer's claim of a "joint investigation." Ms. Moffatt is employed as a counselor with a private practice, not the State. She counsels children and adults on a variety of issues, including depression, anxiety, and abuse. Ms. Moffatt testified that she began seeing S.S. and R.S. in May 2004 and continued to see S.S. and R.S. after Spencer was charged, including up to the time of her testimony. She testified that she counsels the children on issues other than sexual abuse, including basic memory and learning skills. Ms. Moffatt testified that S.S.'s initial statements regarding sexual abuse were unexpected and not the product of coaching or leading questions. Ms. Moffatt further testified that she did not know who "Kirk" was when S.S. declared that "Kirk . . . puts his potty thing inside me . . . and it hurts really lots." It was only later, again in response to a non-leading question, that S.S. identified "Kirk" as her dad. Though the record indicates that Spencer was charged the day after Ms. Moffatt communicated Spencer's identity to DPHHS, Ms. Moffatt's testimony indicated she was unaware that law enforcement awaited the results of her interviews

7

with S.S. and R.S. before charging Spencer. We conclude that Ms. Moffatt served solely as a counselor to S.S. and R.S. and did not function as a State investigator.

¶21 Lisa Weaver testified that as a licensed foster parent she was trained to write things down that seemed important and to contact the DPHHS social worker if problems persisted. Lisa testified that if she encountered such issues she usually contacted Roger Johnson, a DPHHS social worker, so that she could learn how to best help S.S. and R.S. Lisa's testimony indicated that she contemplated S.S. and R.S. living with the Weavers permanently and that she spoke with Ms. Moffatt about how to build trust for the future. Lisa described as "out of the blue" S.S.'s statement that "my daddy, my other daddy, stuck his pee-er in me and it hurt real bad[.]" Lisa further testified that she did not ask follow-up questions because her job is to give the children a good home life not to be a counselor. Our review of the record indicates that Lisa Weaver heard S.S.'s statements in her capacity as a foster parent, not as a State investigator.

¶22 Having determined that Ms. Moffatt and Lisa Weaver were not acting as governmental agents when they heard S.S.'s statements, *Mizenko* counsels that S.S.'s statements are non-testimonial *unless* she had "clear reason to believe" the statement would be used against Spencer in court. *Mizenko*, ¶ 23. However, the *Mizenko* "clear reason to believe" standard as applied to a three-and-a-half-year-old child-declarant is unworkable; it is strained, awkward, and easily capable of abuse. We find the Supreme Court's reasoning in *Davis* helpful in resolving this issue. In *Davis*, the Supreme Court held that, in police interrogations, a statement's classification as testimonial or non-testimonial depends largely on the *primary purpose* of the interrogation producing the

8

statement, based on objective circumstances. ___ U.S. at ___, 126 S. Ct. at 2273-74. If the interrogation's primary purpose is to aid police in an ongoing emergency, the statements are non-testimonial; if the interrogation's primary purpose is to establish past facts potentially relevant to a later criminal prosecution, the statements are testimonial. *Davis*, ___ U.S. at ___, 126 S. Ct. at 2273-74.

¶23    Applying *Davis*'s reasoning to this case, the objective circumstances indicate that when Ms. Moffatt and Lisa Weaver heard S.S.'s statements the primary purpose of their interactions with S.S. and R.S. were counseling and parenting, respectively. Ms. Moffatt's interactions with S.S. and R.S. took place in her office, often while she played on the floor with them. As discussed in ¶ 20, Ms. Moffatt's purpose was to help counsel S.S. and R.S. Based on these circumstances, the primary purpose of Ms. Moffatt's interaction with S.S. and R.S. was to provide them counseling, not to establish past facts from them for use in Spencer's prosecution.

¶24    Similarly, Lisa Weaver interacted with S.S. and R.S. in the home. Lisa was tucking S.S. into bed when S.S. stated that her "other daddy" had abused her. Lisa overheard S.S.'s statement to T.S.—to "lie down like this. It doesn't hurt - - this is how Kirk does it"—while the girls were playing and she was getting camping supplies together. In essence, the primary purpose for Lisa's interactions with S.S. and R.S. was parenting.

¶25    We hold that S.S.'s statements were non-testimonial. Thus, the introduction of S.S.'s hearsay statements did not violate Spencer's Sixth Amendment right to confrontation.

¶26    **II**    **Did the District Court fail to comply with § 46-16-220, MCA, regarding the admissibility of child hearsay?**

¶27    Spencer asserts that the District Court failed to hold a hearing addressing the trustworthiness of S.S.'s hearsay statements and failed to issue findings of fact and conclusions of law setting forth its reasoning for admitting S.S.'s statements; thus, Spencer argues, the District Court failed to comply with Montana's child hearsay rule. We disagree.

¶28    The District Court held a hearing on January 3, 2005, in which the State and Spencer questioned Ms. Moffatt and Lisa Weaver regarding S.S.'s statements. At the hearing, Spencer's counsel stated in a question to Ms. Moffatt, "I will try not to repeat what [the prosecutor] has already gone through because he has done a good job in looking at the *statutory criteria that the Judge needs to look at*." (Emphasis added.) Then, after allowing supplemental briefing, the District Court issued its order admitting S.S.'s hearsay statements on March 8, 2005. We find no error in the District Court's hearing process.

¶29    The admissibility of non-testimonial hearsay statements is governed by the individual states' hearsay laws. *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374. Section 46-16-220, MCA, sets forth the requirements for admitting child hearsay in Montana criminal proceedings.

¶30    A district court may admit a child-victim's hearsay in criminal cases if the child is unavailable as a witness; the hearsay is evidence of a material fact, and more probative than any other available evidence; the offering party gives proper notice of the statement;

10

and the court finds the statement has circumstantial guarantees of trustworthiness. Section 46-16-220, MCA. If these elements are met, the statute then instructs a court to set forth its reasoning on the admissibility of the child-hearsay in findings of fact and conclusions of law. Section 46-16-220, MCA. The statute specifically instructs courts to consider the child-victim's attributes, information regarding the testifying witness, information regarding the statement, corroborating evidence, and other considerations. Section 46-16-220, MCA.

¶31 In this case, the District Court issued a twelve-page order setting forth its reasoning regarding the admissibility of S.S.'s hearsay statements. The District Court noted that the parties had stipulated to S.S.'s unavailability. The District Court adopted as findings of fact the State's three "Notice[s] of Intent to Introduce Hearsay Statements," which contained detailed descriptions of the hearsay statements.[1] The District Court also concluded that S.S.'s hearsay statements were the most probative evidence because the crime "left only modest physical evidence." The District Court then proceeded to analyze one-by-one the factors listed in § 46-16-220, MCA:

    1. The Attributes of the Child Hearsay Declarant

        a. The child's age: S.S. was approximately three and one-half years old when she made the initial statement to her counselor and her foster mother.

        b. The child's ability to communicate verbally: S.S.'s ability to communicate was slightly less than age appropriate and, according to her counselor, difficult to understand at times.

---

[1]As discussed in ¶ 10, the District Court granted the State's fourth notice of intent (filed March 10, 2004) at trial.

c.      The child's ability to comprehend the statements or questions of others: Again, age appropriate, but marginal compared to a typical competent witness.

d.      The child's ability to tell the difference between truth and falsehood: Probably age appropriate.

e.      The child's motivation to tell the truth (i.e., whether the child understands the general obligation to speak truthfully and not fabricate stories): There is no reason to believe that S.S. does not love her father or that she would want him to get in trouble.

f.      Whether the child possessed sufficient mental capacity at the time of the alleged incident to receive an accurate impression of it: S.S. apparently received an accurate impression of what had happened to her, as evidenced by the repetition of similar facts on separate occasions, one being with no adults present whatsoever.

g.      Whether the child possesses sufficient memory to retain an independent recollection of the events at issue: S.S. repeated the allegations several times.

2.  The Witness Relating the Hearsay Statement.

a.      The witness's relationship to the child: The witnesses who would testify about their conversations with S.S. are her foster mother and her counselor.  There is also an audiotape which is not altogether clear.

b.      Whether the relationship between the witness and the child might have an impact on the trustworthiness of the hearsay statement: This seems very unlikely given the manner and timing of the various statements; emphasizing again that the same facts were revealed in circumstances where the child did not know an adult was present.

c.      Whether the witness might have a motive to fabricate or distort the child's statement: No, neither the counselor nor the foster mother showed <u>any</u> animosity to the father and genuinely appeared to want to represent the statements as accurately as possible.

d.      The circumstances under which the witness heard the child's statement, including the timing of the statement in relation to the

incident at issue and the availability of another person in whom the child could confide: The first statement was made at an unknown time after the crime. By clear and convincing evidence, this Court finds and concludes that the child's counselor maintained a strict patient-counselor relationship and at no point did this counselor become an interrogator or interviewer. She was first, foremost and always a therapist. Given that, the child's revelation to Ms. Moffatt is deemed by this Court to have been at a reasonable time after the incidents and that no one else was available for such revelation except the foster mother.

The Court wants to specifically note that it has had frequent recourse to the testimony of Ms. Moffatt. Not only is she highly credible, reliable and professional, there are few witnesses whose testimony this Court would deem more trustworthy.

While the Court finds and concludes that the revelations to the foster mother also were made in reasonable relation to the incidents and that she was clearly one of the few people in this child's life she could trust or could make such statements to, the indicia of reliability is even higher here. As noted above, the foster mother overheard S.S. tell her 1½ year old sister, "Lay down, this won't hurt, this is how Kirk does it." The circumstances of that revelation bear a very high indicia of reliability.

3. The Statement Itself.

a.        Whether the statement contains knowledge not normally attributed to a child of the declarant's age: It is unknown whether a child of S.S.'s age would typically be able to conceive of having her private parts licked or probed. It would be the height of irrationality to deem it otherwise.

b.        Whether it was volunteered spontaneously: The initial statements to the counselor and the foster mother were volunteered. The subsequent statements were also volunteered. The statements were each and all highly similar. These were not interviews or interrogations which gave rise to the statements.

c.        The suggestiveness of prior statements by the witness relating the statement or third parties present when the statement was made: This Court specifically rejects any contention that there was suggestion implanted prior to any of these statements or that the

13

presence of a third person might have stimulated them – there was no third person.

    d.     If statements were made by the child to more than one person and were very consistent.

4. Other Considerations

The particular facts of a case may present the court with considerations other than those outlined above that in the court's judgment will bear on the admissibility of the proffered testimony: It is inconceivable that a child of 3½ would have the sexual knowledge and behaviors exhibited here. That is a persuasive consideration. Exceptionally persuasive was the statement made by S.S. to her sister and overheard by her foster mother. Reflecting as it did the precise statements made at other times to both the foster mother and the counselor, this constitutes a fundamental consideration which leads this Court to conclude that the statements of S.S. have particularized guarantees of trustworthiness. Cross-examination of S.S. about these statements would be of decidedly marginal utility and would in fact be destructive of the very fragile psyche of this young child.

¶32 After considering all the factors required by statute, the District Court determined that S.S.'s statements were admissible through Ms. Moffatt's and Lisa Weaver's testimony. Though the District Court did not specifically label a heading "findings of fact" and "conclusions of law," we cannot say that the District Court acted arbitrarily, without employing conscientious judgment, or that its decision exceeded the bounds of reason and resulted in substantial injustice. *Matz*, ¶ 34. We hold that the District Court adequately complied with § 46-16-220, MCA, and did not abuse its discretion in admitting S.S.'s hearsay statements.

¶33 We note further that the District Court did not discuss the "corroborating evidence" factors in light of our holding in *State v. S.T.M.* that corroborating evidence

14

could no longer be considered in assessing a hearsay statement's reliability. 2003 MT 221, ¶ 34, 317 Mont. 159, ¶ 34, 75 P.3d 1257, ¶ 34. We decided *S.T.M.* prior to *Crawford* and our holding was based on the Supreme Court's decision in *Idaho v. Wright*, 497 U.S. 805, 110 S. Ct. 3139 (1990). We removed the corroborating evidence factor because we could not "conceive of a case in which the admission of the hearsay statements of an alleged victim of child sexual abuse would not implicate the Confrontation Clause as well as the rule against hearsay." *S.T.M.*, ¶ 34. The Supreme Court's rulings in *Crawford* and *Davis* recently have clarified that the Confrontation Clause only applies to testimonial statements; thus, it is now entirely conceivable that a hearsay statement that fails to implicate the Confrontation Clause may nevertheless be inadmissible hearsay. *Davis*, ___ U.S. at ___, 126 S. Ct. at 2274-75. However, the "corroborating evidence" factor does not affect the case before us; the District Court's lack of "corroborating evidence" analysis could only advantage Spencer because the District Court did not consider as evidence S.S.'s and R.S.'s physical injuries discovered by Dr. Gerrity. Thus, we leave for another day an analysis of *S.T.M.*'s continued vitality. In light of *Crawford*, however, we note that courts must again consider Confrontation Clause and hearsay challenges independently, contrary to our announcement in *S.T.M.*, ¶ 22.

¶34 **III    Did the District Court err in excluding Dr. Scolatti's videotaped testimony?**

¶35    Spencer claims that the District Court erred in excluding Dr. Scolatti's videotaped testimony in which Dr. Scolatti stated that Spencer lacked the diagnostic criteria of a

15

pedophile. Spencer argues that Dr. Scolatti's testimony served to rebut the mental state element of sexual intercourse without consent. Spencer directs us to § 46-14-213(2), MCA, in support of his contention:

> When a . . . licensed clinical psychologist . . . who has examined the defendant testifies concerning the defendant's mental condition, the . . . licensed clinical psychologist . . . may make a statement as to the nature of the examination and the medical or psychological diagnosis of the mental condition of the defendant.

¶36 Spencer's reliance on § 46-14-213(2), MCA, is misplaced. When read in its proper context, § 46-14-213, MCA, applies only if mental disease or defect is an issue or if a defendant's fitness to proceed is in question. Section 46-14-213, MCA. Our review of the record reveals neither of these issues exists.

¶37 The District Court excluded Dr. Scolatti's testimony as improper character evidence under M. R. Evid. 404. Though we note that Rule 404 contains an exception that allows a defendant to offer pertinent character evidence, we cannot say the District Court excluded Dr. Scolatti's testimony arbitrarily, or without employing conscientious judgment, or that its decision exceeded the bounds of reason and resulted in substantial injustice. *Matz*, ¶ 34.

¶38 Spencer argues on appeal, as he did below, that Dr. Scolatti's testimony served to generally rebut the mental states of purposely and knowingly. The District Court rejected this contention, stating that the testimony was "distinctly not about the Defendant's mental condition but about his not being a member of a diagnostic group – pedophiles." The District Court concluded:

16

> Defendant argues that because he was diagnosed as not being a pedophile, he could not have the requisite intent. That clearly was a matter for the province of the jury. Given that the "diagnostic criteria" here was less a diagnosis of mental condition and more whether the Defendant was or was not includable in that grouping called pedophiles and thus whether he could or could not exhibit behaviors of members or non-members of that class, it would be impermissible testimony before the jury.

¶39 Our review of Dr. Scolatti's testimony supports the District Court's conclusion that such testimony would be improper in this case. Moreover, we question the relevance of Dr. Scolatti's testimony and whether it could have assisted the trier of fact.

¶40 Though Dr. Scolatti conducted a number of tests and psychological evaluations, much of his testimony focused on the Abel Assessment for Sexual Interest test (the Abel test). The Abel test consists of two-parts: (1) a questionnaire focusing on a variety of areas including demographics, sexual-interest, social desirability, and the problematic thinking of sex offenders; and (2) a test measuring the visual reaction time to a series of slides that feature various gender and age categories. In his testimony, Dr. Scolatti stated that the Abel test is controversial among researchers and that he thought the test could be "beaten." He also stated that, when applied to an existing offender group, the Abel test identified child molesters "with different levels of success."

¶41 Dr. Scolatti further testified that Spencer did not have the diagnostic criteria of a pedophile based, in part, on the fact that "Spencer . . . did not tell me he had any sort of sexual interest pattern or sexual interest or arousal to children in fantasy." Finally, Dr. Scolatti observed that not all people who commit sex crimes have a deviant interest pattern and that a person could fail to meet the criteria of a pedophile yet still sexually abuse a child. We conclude that whatever relevance Dr. Scolatti's testimony may have

17

possessed, the dangers of confusing the issues or misleading the jury substantially outweighed its probative value, and thus it ran afoul of M. R. Evid. 403. We will uphold a district court's correct decision even if its reasoning was incorrect. *State v. Rensvold*, 2006 MT 146, ¶ 34, 332 Mont. 392, ¶ 34, 139 P.3d 154, ¶ 34. Based on our review of the District Court order and Dr. Scolatti's testimony, we hold that the District Court acted within its discretion in excluding Dr. Scolatti's testimony.

## CONCLUSION

¶42 We conclude that S.S.'s statements were non-testimonial and did not implicate Spencer's Sixth Amendment right to confrontation. Additionally, the District Court did not abuse its discretion in admitting S.S.'s hearsay statements and excluding Dr. Scolatti's testimony. We affirm the District Court's judgment.


/S/ W. WILLIAM LEAPHART


We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ JIM RICE