JUSTICE RICE
specially concurs.
¶64 I agree with the Court’s conclusion to affirm the District Court’s judgment on Issues I-IV. However, I disagree with the Court’s analysis under Issues IB, IC, and II, and would affirm under alternate reasoning.
Issue I
¶65 The Court determines that Aleasha’s statement to her neighbor (Issue IB) and Aleasha’s note (Issue IC) are hearsay to which no hearsay exception applies, but that the District Court’s admission of this evidence constituted “harmless error” for which we need not reverse. Opinion, ¶ 28. While I agree with the outcome of the Court’s decision, I write separately to urge the adoption of the forfeiture by wrongdoing exception to the hearsay rules.
¶66 Forfeiture by wrongdoing, as this Court accepts, is an equitable concept that prevents an individual from benefiting from his own wrongful actions. Opinion, ¶ 47. In fact, Montana law generally codifies the equitable principle in § 1-3-208, MCA (2005), which states that “[n]o one can take advantage of his own wrong.” While the Montana Rules of Evidence are silent regarding the forfeiture doctrine’s relation to hearsay, the principle has been codified in the *262 Federal Rules of Evidence as Rule 804(b)(6). This rule provides that: “A statement offered against a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness” is not considered hearsay.[1] ¶67 The United States Supreme Court first applied the doctrine of forfeiture by wrongdoing in Reynolds v. United States, 98 U.S. 145, 158 (1878):
The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts.... [I]f [a defendant] voluntarily keeps the witnesses away, he cannot insist on his [Sixth Amendment] privilege. If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated.
The Supreme Court recently affirmed the doctrine’s validity in Crawford v. Washington, 541 U.S. 36, 62, 124 S. Ct. 1354, 1370 (2004) (“the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds”). It has been adopted by numerous state courts as well. After recently considering both the evidentiary and constitutional aspects of the issue, the Supreme Judicial Court of Massachusetts noted that “we are aware of no jurisdiction that, after considering the doctrine, has rejected it.” Commonwealth v. Edwards, 830 N.E.2d 158, 166-67 (Mass. 2005). Even after acknowledging that its state constitution provides broader protections than the federal constitution, the Massachusetts Court interpreted its state constitution “coextensively” with the federal constitution on this issue and recognized the doctrine, “[g]iven the overwhelming precedential and policy support for its adoption[.]” Edwards, 830 N.E.2d at 168.
¶68 I would apply this principle to the Rules of Evidence as well. However, despite a previous opportunity to do so, the Court has so far declined. We were presented with proposed M. R. Evid. 804(b)(6), the forfeiture by wrongdoing exception to M. R. Evid. 802’s bar against admission of hearsay, following a recent rule review process. Support *263 for the adoption was offered by various members of the Commission on Evidence and by district court judges, but the Court rejected the rule. I continue to believe that the rule would serve an appropriate and important purpose in the search for truth which our courts are intended to conduct. The instant case presents a clear example of how a defendant may benefit from his wrongdoing and why the exception should be adopted. Accordingly, the Court’s holding, which applies the forfeiture doctrine as an exception to the Confrontation Clause, should apply with equal force as an exception to the rule against hearsay, which would admit the evidence at issue here.
Issue II
¶69 The Court concludes that Aleasha’s note was testimonial because “the purpose of the note was to explain Aleasha’s untimely death or poisoning, the intended audience reasonably included law enforcement, and the circumstances surrounding the note indicate that an objective declarant reasonably should have anticipated that the State would make use of the statements at trial.” Opinion, ¶ 38. I cannot agree with any of these conclusions because the Court has added its own speculation, or has ignored parts of the note, to reach each one.
¶70 First, the Court states that the “note’s substance indicates that the note’s purpose was to explain her untimely death or poisoning ....” Opinion, ¶ 37. However, the Court does not adequately consider that the note gave instruction in the event Aleasha unexpectedly would “become sick and on the edge of death.” In such a sickened state, Aleasha would benefit by giving her medical providers the “answers” she was providing in the note. The Court simply pretends these words do not exist. The State’s argument to this effect is improperly dismissed by the Court.
¶71 Then, the Court concludes that the note was “intended” for law enforcement because it was left in the kitchen. Opinion, ¶ 38. This conclusion is based upon the Court’s surmise that law enforcement could more easily find it there. Assigning an intention by Aleasha to involve law enforcement from this most ordinary of actions is mere speculation. I submit that the note would have been found by law enforcement in any room of the house, and its location in the kitchen, without more, added nothing to the note’s testimonial significance. Indeed, when the “more” is considered, which is virtually ignored by the Court, a contrary conclusion appears. The note was handwritten on a small, single piece of paper and was found in Aleasha’s kitchen *264 among her personal correspondence and bills. The location of the note in Aleasha’s personal home, among personal papers, supports the objective conclusion that the note had a personal purpose and was meant for those who would have been typical visitors to her kitchen. Aleasha made no effort whatsoever to put her message into the hands of officials, to otherwise take precautions to protect or preserve the message for legal purposes, or to even label or direct the note to law enforcement.
¶72 While the Court states that it “finds no particular inquiry dispostive in determining whether a statement is testimoniad,]” Opinion, ¶ 34, the Court’s analysis implies the question is susceptible to short, simplistic solutions: first, that because the note was more than a “casual remark,” it must be testimonial, and because the note was discovered by a police officer, it must have been intended for police to easily find it. Opinion, ¶ 38. This ignores the further details of the note and the surrounding circumstances.
¶73 When determining if a statement made by an unavailable declarant is testimonial, two Montana cases guide us: State v. Mizenko and State v. Spencer. In State v. Mizenko, we offered initial, post-Crawford boundaries of testimonial and non-testimonial statements for purposes of the Confrontation Clause. 2006 MT 11, 330 Mont. 299, 127 P.3d 458. We concluded that statements are testimonial in at least two situations: (1) “when a declarant knowingly speaks to a police officer or governmental agent” and (2) when the declarant had a “clear reason to believe that the statement would be used in court as substantive evidence against the defendant. . . .” Mizenko, ¶ 23. In contrast, we explained that a statement is non-testimonial when the declarant has an “objective reason to believe” that the statement will serve to “avert or mitigate an imminent or immediate danger ....” Mizenko, ¶ 23. We also stated that the “clear reason to believe” standard is an “objective” standard. Mizenko, ¶ 23 n. 3.
¶74 In State v. Spencer, we elaborated on Mizenko, concluding that where the “clear reason to believe” standard is “unworkable,” we must review the statement to determine its “primary purpose.” 2007 MT 245, ¶ 22, 339 Mont. 227, ¶ 22, 169 P.3d 384, ¶ 22. There, we relied on the Supreme Court’s decision in Davis v. Washington, 547 U.S. 813, 126 S. Ct. 2266 (2006). Spencer, ¶¶ 22-23. InDavis, the Supreme Court decided that when circumstances objectively indicate that the primary purpose of an interrogation is to enable police to assist in an ongoing emergency, the statements are non-testimonial. Davis, 5A7 U.S. at 821, 126 S. Ct. at 2273. If however, the circumstances objectively signify *265 that an ongoing emergency does not exist, but rather the interrogation’s purpose is to prove past events that may be relevant in a future prosecution, the statements are testimonial. Davis, 547 U.S. at 821-24, 126 S. Ct. at 2273-74. Accordingly, when determining, for Confrontation Clause purposes, whether a statement is testimonial, we first consider whether it is objectively reasonable that the declarant intended the statement to be used as evidence against the accused and, second, where there is no clear reason to believe that the declarant intended the statement to be used as evidence, we consider the primary purpose of the statement.
¶75 When considering the note in its entirety under these standards, Aleasha may just as well have intended the note to alert medical providers to the cause of a potential illness, a non-testimonial purpose, or, indeed, simply have offered an explanation to others about the reason for her demise. The salutation “[t]o whom it concerns[,]” just as “reasonably” includes medical or emergency personnel, relatives, and friends, thereby mitigating the note’s potential testimonial qualities. The Court ascribes a law enforcement purpose from this broad salutation because it necessarily includes law enforcement. Instead, the Court should infer otherwise: because the generic salutation potentially included anyone in the world, it was not primarily a directive to law enforcement.
¶76 Even assuming that the Court’s reasoning about Aleasha’s note and the reasoning of this concurrence offer competing, objectively reasonable interpretations regarding Aleasha’s intent, it would then be appropriate to consider, as in Davis and Spencer, the “primary purpose” of the note to determine whether it constitutes testimonial or non-testimonial evidence. Here the Court limits the application of our holding in Spencer to only interrogations, Opinion, ¶ 38 n. 1, thereby disregarding the very reason we adopted the primary purpose test in the first place. We adopted the primary purpose analysis because the “clear reason to believe” standard was unworkable as applied to the statement of a three-and-a-half-year-old child. Spencer, ¶ 22. Accordingly, application of the primary purpose analysis does not turn solely on whether an interrogation is involved, but considers whether the clear reason to believe standard is unworkable under the circumstances. However, in an effort to avoid consideration of the primary purpose of the note, the Court narrowly constricts the kinds of circumstances in which the primary purpose analysis can be applied-only to interrogations-and deflates our holding in Spencer. This is an artificial and shortsighted tact which will not serve us well *266 in the future. To the contrary, the primary purpose analysis should be applicable to any statement, including a hand-written note, where it is unclear whether the declarant intended the statement to be used as evidence. Accordingly, where there are competing objectively reasonable interpretations of a statement, as here, we should look to the statement’s primary purpose and “based on objective circumstances” determine whether the statement is testimonial. Spencer, ¶ 22.
¶77 Pursuant to our holding in Spencer, where the primary purpose of the statement is to assist in future litigation, the statement is deemed testimonial. Spencer, ¶ 22. However, where the primary purpose is to mitigate future harm, the statement is non-testimonial. Spencer, ¶ 22. In analyzing the primary purpose we must consider the totality of the “objective circumstances.” Spencer, ¶ 22. Unfortunately, the Court’s opinion considers only a fraction of the note. Looking at the note as a whole, most of the note discusses the availability of a drug which could possibly cause Aleasha’s sickness or death. The note’s third sentence states: “So, if I unexspetly [sic] become sick and on the edge of death, and perhaps I die no [sic] you will have some answers.” The conclusory word “so” indicates that the note’s purpose is to provide “answers” if Aleasha contracted a serious illness which could bring about her death. The note indicates the cause of her potential sickness (a drug from Mexico that doctors may not know about), and also suggests investigatory leads (Sanchez or his friends) that may be helpful in ascertaining either the type of drug for medical purposes or assigning criminal responsibility — an admittedly testimonial aspect of the note. However, looking at the note in its entirety, and the circumstances surrounding Aleasha’s handling of the note, discussed above, it served largely to alert family, friends, or medical personnel to the reasons she came down with a sudden and strange illness. Consequently, the note’s primary purpose was not to serve as evidence in a criminal prosecution, but to mitigate potential harm.
¶78 Thus, I would conclude that there is neither a “reasonably objective” reason to believe that the note was intended for criminal prosecution purposes, nor circumstances supporting a conclusion that the note was “primarily” written to support a prosecution. Accordingly, while I support adoption of the forfeiture by wrongdoing exception for Confrontation Clause purposes, I believe that the note is non-testimonial and would end the Confrontation Clause analysis at that point.

 The dissenting opinion states that the adoption of the forfeiture by wrongdoing exception within the Federal Rules of Evidence is not “a principled ground” for considering adoption of the exception for our state rules. Dissent, ¶ 123 n. 5.1 confess an inability to understand why consideration of the approach taken by the federal rules-and indeed, the approach of many other states who have likewise adopted the exception-on an evidentiary issue is unprincipled. Nor does adoption of the exception eliminate all considerations of trustworthiness.